**AMERICAN TELEPHONE & TELEGRAPH COMPANY, Plaintiff,**

v.

**NORTH AMERICAN INDUSTRIES OF NEW YORK, INC., Defendant and Third–Party Plaintiff**

v.

**NEW YORK TELEPHONE COMPANY, Third–Party Defendant.**

**No. 90 Civ. 5198 (MBM).**

United States District Court, S.D. New York.

Feb. 18, 1992.

Eric H. Moss, Great Neck, N.Y., for defendant and third-party plaintiff.

Joseph Angland, John M. Clarke, Barry S. Abrams, Colvin W. Grannum, Dewey Ballantine, New York City, for third-party defendant.

## OPINION AND ORDER

MUKASEY, District Judge.

Third-party defendant New York Telephone Company ("NYTel") has moved to amend the August 22, 1991 Opinion and Order herein, 772 F.Supp. 777 (S.D.N.Y. 1991) (the "Opinion"), which rejected its assertion *inter alia* that the third-party complaint herein is barred by the state action defense under the antitrust laws, so as to certify the issue pursuant to 28 U.S.C. § 1292(b).[1] Familiarity with the Opinion is assumed for current purposes.

In essence, NYTel argues that section III of the Opinion misread controlling authority by failing to hold that if NYTel itself is regulated by New York State in the provision of the interconnection services which defendant North American Industries of New York, Inc. ("NAI") claims NYTel improperly withheld, then NYTel may invoke the state action defense to NAI's antitrust claim. NYTel points out that section III of the Opinion examined state regulation of the coin operated telephone business in which NYTel and NAI compete, rather than regulation of the provision of interconnection services which NAI claims were improperly withheld. The applicability of the state action defense is the "controlling question of law" as to which NYTel seeks immediate appeal.

NYTel has noted in its papers that if a court finds that a prior ruling was incorrect, it is always free to act *sua sponte* to change it. *See, e.g., Carey v. White*, 375 F.Supp. 1327, 1332 (D.Del.1974). Indeed, NYTel acknowledged at a conference that the only reason it did not move for reargument pursuant to Rule 3(j) of this Court's Civil Rules[2] is that it acted beyond the 10–day limit imposed in that Rule.

As set forth below, because it appears that section III of the August 22 Opinion was incorrect in that it examined state regulation of the coin operated telephone business rather than the interconnection services business, that section is withdrawn. However, this shift in focus does not change the result and the motion to dismiss

---

1. That section authorizes a district judge who enters an order not otherwise appealable, to permit an appeal if that judge can certify that the order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation."

2. That Rule permits service of a notice of motion for reargument within 10 days of the docketing of the decision to be reargued. The decision at issue here was docketed on August 22, 1991; the notice of motion was served on October 7, 1991.

again is denied. Further, and also as set forth below, the motion to certify this issue for immediate appeal is denied for want of a legal issue as to which there is "substantial ground for difference of opinion." 28 U.S.C. § 1292(b).

## I.

■ The Opinion correctly stated the test for determining when conduct alleged to violate the antitrust laws is exempt from scrutiny because of state action. That test, initially formulated in *California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97, 105, 100 S.Ct. 937, 943, 63 L.Ed.2d 233 (1980), is whether the challenged restraint is " 'one clearly articulated and affirmatively expressed as state policy,' " and whether the state "actively" supervises the anticompetitive conduct. *Southern Motor Carriers Rate Conference, Inc. v. United States*, 471 U.S. 48, 57, 105 S.Ct. 1721, 1726, 85 L.Ed.2d 36 (1985) (quoting *Midcal*, 445 U.S. at 105, 100 S.Ct. at 943).

One obvious flaw in section III of the Opinion is that it then went on to examine only state regulation of the resale of telephone service through a customer owned or leased currency operated telephone, referred to as COCOT service, in which NYTel and NAI compete and in which NAI alleges that NYTel favors itself by providing interconnection features to its own COCOT entity that more easily defeat consumer theft of telephone service than the interconnection features NYTel provides to its COCOT competitors. Although NAI has alleged that NYTel is seeking to monopolize the COCOT market by using its interconnection monopoly improperly in this fashion, NYTel argues that the state action defense in this case, if such a defense exists, arises from New York's regulation of NYTel's interconnection activities, the means by which NAI alleges that NYTel seeks to monopolize the COCOT market. Here NYTel, as the proponent of the defense, is probably correct, although if state regulation suggested a legislative intent to encourage NYTel to monopolize the COCOT market then NYTel might well argue that its attempt to do so is protected, and regulation of that market would be relevant.

■ Absent any apparent state policy to permit monopolization of the COCOT market, NYTel relies principally on the Second Circuit's ruling in *Capital Telephone Co. v. New York Telephone Co.*, 750 F.2d 1154 (2d Cir.1984), *cert. denied*, 471 U.S. 1101, 105 S.Ct. 2325, 85 L.Ed.2d 843 (1985), that not only is NYTel's provision of interconnection services pervasively regulated, but also that that regulation shows an intent by New York to displace competition with regulation. 750 F.2d at 1160–63. Notably, NYTel can point to no state legislative or administrative policy that permits discriminatory provision of interconnection services, the anticompetitive conduct alleged here. Indeed, NYTel freely concedes that this challenged anticompetitive conduct violates § 91 subd. 3 of the Public Service Law, which provides:

> No ... telephone corporation shall make or give any undue or unreasonable preference or advantage to any person, corporation or locality, or subject any particular person, corporation or locality to any undue or unreasonable prejudice or disadvantage in any respect whatsoever.

NYTel brushes away any suggestion that a conflict between the challenged anticompetitive conduct and state policy as expressed in a statute vitiates the state action defense. Rather, NYTel claims that once pervasive regulation displacing competition has been found to exist, any anticompetitive conduct in which NYTel is alleged to be engaged with respect to its interconnection services is exclusively the business of the regulatory agency established under New York law to monitor those services— the Public Service Commission.

However, to apply the state action defense in that fashion would be to disregard the logical and historical underpinnings of that defense. Beginning with *Olsen v. Smith*, 195 U.S. 332, 344–45, 25 S.Ct. 52, 54–55, 49 L.Ed. 224 (1904), and with specific articulation in *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), the Supreme Court established a rule, arising

from considerations of federalism, that a state may pursue its legitimate policies by adopting programs that restrain competition in a way that would otherwise violate the antitrust laws, provided that the state also supervises such programs closely enough to assure that competition is restricted to serve public rather than merely private ends. *Patrick v. Burget*, 486 U.S. 94, 100–01, 108 S.Ct. 1658, 1662–1663, 100 L.Ed.2d 83 (1988).

NYTel urges also that *Southern Motor Carriers Rate Conference, Inc. v. United States, supra,* particularly footnote 25 of that opinion, supports its position here. In *Southern Motor Carriers,* the Supreme Court held that even if anticompetitive conduct is merely permitted and not compelled by state policy, then private parties acting consistent with that policy may engage in anticompetitive conduct without violating the federal antitrust laws. In the cited footnote, 471 U.S. at 65 n. 25, 105 S.Ct. at 1731 n. 25, the Court simply distinguished prior cases where insufficient state intent to displace competition was held to foreclose the state action defense, from the case then at hand where the state statute did not authorize the regulatory agency to choose free-market competition. From this footnote, NYTel apparently would reason that because New York's Public Service Commission is not free to choose free-market competition in interconnection services, NYTel's conduct is automatically shielded by the state action defense. That reasoning puts more weight on the footnote than it will support, while disregarding the text to which the footnote is appended. That neglected text expresses the holding "that if the State's intent to establish an anticompetitive regulatory program is clear ... the State's failure to describe the implementation of its policy in detail will not subject *the program* to the restraints of the federal antitrust laws." 471 U.S. at 65, 105 S.Ct. at 1731 (emphasis added). The text then goes on to confer immunity from Sherman Act liability on "anticompetitive conduct ... taken pursuant to a 'clearly articulated state policy.'" *Id.* (quoting *Midcal Aluminum, Inc., supra,* 445 U.S. at 105, 100 S.Ct. at 943). Nothing in the

footnote or in the text purports to confer immunity from Sherman Act liability on anticompetitive conduct alleged to violate a "program" adopted pursuant to a "clearly articulated state policy" simply because that policy may authorize other conduct that is anticompetitive.

Even in an expansive reading of the state action defense such as the Second Circuit applied in *Capital Telephone,* the implication in legislation of an apparent state intent to supplant open competition with regulation was found to justify no more than "activities that are reasonably necessary or related to the subject of the legislation...." 750 F.2d at 1162. Neither that Court nor any other has ever suggested that anticompetitive activities inimical to the subject of the state legislation also are protected by the state action defense. Such a suggestion would transform a device created to protect state policy into a tool to undermine state policy. It would also transform the limited policy of federalism that underlay the original rule, *Cine 42nd Street Theater Corp. v. Nederlander Org.,* 790 F.2d 1032, 1039 (2d Cir.1986), into an odd and sweeping canon of reverse preemption, with federal antitrust laws giving way to state regulation whether or not a violation of federal law is needed to help achieve the goal of such regulation.

Because NYTel's position finds no support in law or logic, its motion to dismiss NAI's third party complaint based on the state action defense must be denied.

## II.

In order to certify for immediate appeal the question of whether NYTel may invoke the state action defense here, I must find that an order denying NYTel summary judgment and refusing to apply that defense in this case would raise "a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). As to two of the three prongs of that test there can be little dispute. The state action issue raises a "controlling issue of law" in that it would control the outcome of the third-party action in this

case. *See Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir.1990); *In re Motor Ship Pacific Carrier*, 489 F.2d 152 (5th Cir.), *cert. denied*, 417 U.S. 931, 94 S.Ct. 2643, 41 L.Ed.2d 235 (1974) (deciding certified question of admiralty jurisdiction of third-party claims). Nor can there be much argument that an immediate appeal could speed the outcome of this lawsuit. If NAI's monopolization claim against NYTel were dismissed, all that would remain would be AT & T's claim against NAI for unpaid long distance charges, a claim that could be resolved more quickly without the appended third-party action.

■ The remaining prong of the test, however, gives me pause, despite the view of a leading commentator that, "The requirement that there be substantial ground for difference of opinion has given no difficulty." J.W. Moore and B.J. Ward, 9 *Moore's Federal Practice*, ¶ 110.22[2] at 277 (1991). Although the scope of the state action defense continues to provide ground for disagreement within this Circuit, *see Capital Telephone Co., supra*, 750 F.2d at 1166–69 (Pierce, J. dissenting), and in the Supreme Court, *See Columbia v. Omni Outdoor Advertising, Inc.*, —— U.S. ——, 111 S.Ct. 1344, 1356–64, 113 L.Ed.2d 382 (1991) (Stevens, White and Marshall, JJ. dissenting); *Southern Motor Carriers Rate Conference v. United States, supra*, 471 U.S. at 66–80, 105 S.Ct. at 1731–1739 (Stevens and White, JJ. dissenting), that disagreement does not seem to my eye to include any support for NYTel's extreme view of that defense. Although NYTel's position has not been rejected explicitly in any case disclosed by argument or research, that does not mean that a difference of opinion about it is "substantial" as opposed to merely metaphysical.

Accordingly, the motion for certification pursuant to 28 U.S.C. § 1292(b) is denied. *See Shipping Corp. of India v. American Bureau of Shipping*, 752 F.Supp. 173, 175 (S.D.N.Y.1990).

SO ORDERED: