**SUNSHINE CELLULAR, Plaintiff,**

v.

**VANGUARD CELLULAR SYSTEMS, INC., Defendants.**

No. 92 Civ. 3194 (RLC).

United States District Court, S.D. New York.

Oct. 28, 1992.

provides nonwireline cellular telephone service in a Pennsylvania service area known as "Pennsylvania 8." Defendant Vanguard Cellular Systems, Inc. ("Vanguard") is a North Carolina corporation which provides nonwireline cellular telephone service for a cluster of service areas known as the "Pennsylvania Supersystem."

Vanguard's Pennsylvania Supersystem territory includes FCC-designated service areas in much of Eastern Pennsylvania as well as portions of New York and Maryland. Sunshine describes the geographic location of its service area as the "hole" in Vanguard's "doughnut-shaped" Pennsylvania Supersystem, for Vanguard's cluster of service areas is adjacent to Sunshine's service area at many points.

Pursuant to federal regulation, the FCC divided the country into 734 local cellular service areas, and only two firms are permitted to offer facilities-based cellular service in each area. Originally, all licenses were granted by the FCC by lottery. Sunshine won the FCC lottery to be the nonwireline cellular provider for Pennsylvania 8 in November, 1989. By regulation in effect when most of the cellular licenses were awarded, one of the two competitors in each service area was required to be a "wireline" company, a firm offering conventional local telephone service, and the other had to be a "nonwireline" company, one not affiliated with a regional or local telephone company.[1] Licensees may sell their licenses, or purchase licenses from other licensees.

White & Case, New York City (Richard W. Reinthaler, Ronald W. Davis, James W. Perkins, of counsel), for plaintiff.

Latham & Watkins, New York City (Alan L. Bushlow, Reed E. Hundt, Curtis P. Lu, of counsel), for defendant.

## OPINION

ROBERT L. CARTER, District Judge.

### I.

Plaintiff Sunshine Cellular ("Sunshine") is a Maryland general partnership which

Vanguard's business strategy as recited in its own documents is to expand its cellular telephone system by creating a network of "seamless coverage" in adjacent FCC-defined service areas. Complaint ¶ 22. Toward this end, Vanguard acquired two licenses in 1991 from cellular phone providers in service areas adjacent to those in which Vanguard already possessed licenses enabling it to link together some of its service areas. As Sunshine sees it, Van-

---

**1.** Sunshine does not make clear, however, whether this regulation is still in effect.

guard is out to acquire Sunshine's license to "fill in the hole" in Vanguard's doughnut-shaped Pennsylvania Supersystem.

Vanguard has refused to enter into a "two-way roaming agreement" with Sunshine although it is customary in the industry for cellular companies in adjacent service areas to enter into such agreements. A subscriber who takes his mobile phone outside the service area where he lives is said to be "roaming" into another service area. According to Sunshine, a roaming subscriber has no access, except on an inconvenient and inefficient basis, to the cellular telephone system in the service area into which he has roamed unless an arrangement is in place between the subscriber's home company and a cellular phone company in that service area.

Companies typically agree to use the "Model Roamer Agreement" prepared under the direction of the Cellular Telecommunications Industry Association. A "two-way roaming agreement" is a reciprocal agreement in which cellular companies promise to bill their subscribers for all roaming calls made by their respective subscribers in the other company's service area. Under such an arrangement although the subscriber's home company is responsible for billing, all revenue from the call is remitted to the company in the service area in which the call was placed.

Sunshine claims most roaming revenue is derived from customers in adjacent markets, so roaming revenues from Vanguard customers are vital to its ability to compete. Vanguard has entered into a two-way roaming agreement with the wireline cellular company in Sunshine's service area, as well as with other wireline and nonwireline companies around the country. Allegedly Vanguard refuses to enter into a similar arrangement with Sunshine on commercially reasonable terms even though Sunshine's cellular system is "better and more complete" than the cellular system of the wireline company in Sunshine's service area.

Every cellular telephone is designed to be compatible with cellular systems in all service areas within the United States. Thus, a telephone may be used wherever the subscriber travels unless it is programmed to limit access to particular cellular systems. Sunshine contends Vanguard is planning or has already begun to block access to Sunshine's cellular system on new cellular telephones provided to Vanguard customers, and Vanguard is advising its customers that Sunshine is demanding excessive rates for use of its system. Sunshine also claims that Vanguard, through a wholly-owned subsidiary, initiated a "baseless and sham" lawsuit against Sunshine in order to interfere with Sunshine's efforts to secure financing and begin construction.

Sunshine filed a First Amended Complaint asserting against Vanguard antitrust claims for monopoly and attempted monopoly in violation of both Section 2 of the Sherman Act, 15 U.S.C. § 2, and Pennsylvania antitrust common law as well as a claim for tortious interference with business relations. Vanguard has filed a motion to dismiss all of these claims pursuant to Rule 12(b)(6), F.R.Civ.P., for failure to state a claim.

Vanguard contends that Sunshine did not satisfy any of the requirements for asserting a monopoly or attempted monopoly claim under Section 2 of the Sherman Act. Specifically, Vanguard claims that Sunshine lacks standing to bring either claim; that Sunshine did not demonstrate that Vanguard has either "monopoly power" or a "dangerous probability" of attaining a monopoly in any relevant market; that Sunshine did not allege any "anticompetitive" conduct by Vanguard; and that Sunshine did not show that Vanguard has a specific intent to monopolize, a requirement for attempted monopoly. Based on the same reasons, Vanguard contends Sunshine's Pennsylvania antitrust common law claim should be dismissed. Also pursuant to Rule 12(b)(6), F.R.Civ.P., Vanguard moves to dismiss Sunshine's claim for tortious interference with business relations for failure to adequately plead several elements required to assert such a claim.

In the same motion, Vanguard requests the court to strike the portion of Sunshine's complaint that alleges Vanguard initiated a

"baseless and sham" lawsuit against Sunshine pursuant to Rule 12(f), F.R.Civ.P. In a separate motion, Vanguard requests a transfer of venue to North Carolina or Pennsylvania pursuant to 28 U.S.C. § 1404(a).

## II. MOTION TO DISMISS

In determining the adequacy of a claim under Rule 12(b)(6), F.R.Civ.P., consideration is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken. *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir.1991). A court must construe in plaintiff's favor any well-pleaded factual allegations in the complaint. *Allen v. Westpoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir.1991). Dismissal is not warranted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). In antitrust cases in particular, the Supreme Court has stated that "dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly." *Hospital Bldg. Co. v. Trustees of Rex Hosp.*, 425 U.S. 738, 746, 96 S.Ct. 1848, 1853, 48 L.Ed.2d 338 (1976).

### A. *Section 2 Sherman Act Claims*

Section 2 of the Sherman Act makes it illegal for any person to "monopolize, or attempt to monopolize, ... any part of the trade or commerce among the several States, or with foreign nations." 15 U.S.C. § 2 (1982). Sunshine's monopoly claim alleges that Vanguard violated § 2 of the Sherman Act by "wrongfully refusing to deal and cooperate with Sunshine on commercially reasonable and non-discriminatory terms, thereby unlawfully leveraging monopoly power into an adjacent market."

Complaint ¶ 53. Sunshine's attempted monopoly claim alleges that Vanguard violated § 2 by denying Sunshine access to an essential facility, the two-way roaming agreement, in order to attempt to monopolize the market for cellular telephone service in Pennsylvania 8. Complaint ¶ 55.

#### 1. Standing

A private plaintiff like Sunshine seeking to enforce § 2 of the Sherman Act must satisfy the standing requirements of sections 4 and 16 of the Clayton Act[2] which are: 1) proof of an "antitrust injury" and 2) proof that the plaintiff is a "proper party" to bring a suit against the defendant. *See Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 110–111, 107 S.Ct. 484, 489, 93 L.Ed.2d 427 (1986); *Associated General Contractors, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 540–545, 103 S.Ct. 897, 909–912, 74 L.Ed.2d 723 (1983). Vanguard claims Sunshine has not satisfied either requirement.

■ In attacking the sufficiency of Sunshine's antitrust injury, Vanguard focuses on the effect of its refusal to enter into a two-way roaming agreement with Sunshine, and argues that Sunshine has not alleged that its injury stems from a "competition-reducing" effect of Vanguard's behavior. *See Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 342–44, 110 S.Ct. 1884, 1894, 109 L.Ed.2d 333 (1990). According to Vanguard, the federal regulation permitting only two providers of cellular service for each FCC-defined local cellular service area means that competition will not be reduced even if Vanguard's refusal to enter a two-way roaming agreement results in Vanguard displacing Sunshine. As Vanguard explains, the "competitive structure" of the Pennsylvania 8 Rural Service Area would remain unchanged because "two and only two providers of cellular services ... would remain in Pennsylvania

---

**2.** Section 4 of the Clayton Act provides in relevant part that "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor" for treble damages. 15 U.S.C. § 15(a). Section 16 of the Clayton Act provides in rele-

vant part that: "Any person, firm, corporation, or association shall be entitled to sue for and have injunctive relief ... against threatened loss or damage by a violation of the antitrust laws...." 15 U.S.C. § 26.

8," and "the substitution of one dealer for another—unaccompanied by any harm to competition in the relevant market—is not an antitrust injury." Defendant's Memorandum at 27.

Vanguard's "competitive structure" argument was discounted in *Otter Tail Power Co. v. United States*, 410 U.S. 366, 93 S.Ct. 1022, 35 L.Ed.2d 359 (1973).[3] The focus on "competitive structure" misses the point, rather the focus in determining antitrust injury is on "competitive process." [4] Even if the Pennsylvania 8 service area is legally structured so that only two cellular phone providers may compete within it, the Sherman Act protects the competitive process for acquiring a position as one of the two providers.

In any event, Sunshine has alleged that its losses stem from "competition-reducing" effects of Vanguard's anticompetitive conduct, and therefore has provided proof of "antitrust injury". Sunshine claims that as a result of Vanguard's refusal to enter into a two-way roaming agreement it "will be forced by economic circumstances to sell to Vanguard, because no one else would want to buy a business that has been the subject of successful predation;" and that Vanguard's strategy "jeopardize[s] the development of cellular territories by discouraging independent suppliers such as Sunshine from developing their territories in efficient ways." Complaint ¶¶ 47–51.

█ Sunshine's proof of an antitrust injury is necessary but not sufficient to establish standing. Courts must also consider whether the plaintiff is a "proper party" to bring a suit against the defendant based upon the following factors: (1) the directness or indirectness of the asserted injury; (2) the existence of an identifiable class of persons whose self-interest would normally motivate them to vindicate the public interest in antitrust enforcement; (3) the speculativeness of the alleged injury; and (4) the difficulty of identifying damages and apportioning them among direct and indirect victims so as to avoid duplicative recovery. *See Associated General*, 459 U.S. at 540–45, 103 S.Ct. at 909–12; *Nat. Assoc. of Pharmaceutical Mfrs., Inc. v. Ayerst Laboratories Div. of/and American Home Products Corp.*, 850 F.2d 904, 912 (2d Cir. 1988).

Apparently attacking Sunshine's satisfaction of the first and third factors, Vanguard claims Sunshine's injury is "remote and speculative." Sunshine's injury is not remote because Sunshine is the target of Vanguard's alleged refusal to deal or denial of an essential facility. *See Disenos Artisticos E Industriales, S.A. v. Work*, 676 F.Supp. 1254, 1279 (E.D.N.Y.1987). Sunshine's injury is not speculative because it is currently losing substantial revenues as a result of Vanguard's conduct. Vanguard also attacks Sunshine's satisfaction of factor two claiming that since the only "concrete" harm alleged by Sunshine is to Vanguard customers, those customers are the proper party to bring suit. However, Sunshine also alleges "concrete" harm to

---

**3.** In *Otter Tail* only one company, either the defendant or a town's municipal electrical power company, could be granted a retail franchise in each town. Like Vanguard the dissent in *Otter Tail* believed competitive structure was relevant, and considered it significant that "a monopoly [wa]s sure to result either way." 410 U.S. at 388–89, 93 S.Ct. at 1035. The majority found it unnecessary to deal with the dissent's concern, and held that the defendant violated the antitrust laws by refusing to sell its wholesale electrical power to the municipal companies. *Id.* at 377, 93 S.Ct. at 1029. Because of defendant's refusal to sell, the municipal companies were unable to compete against the defendant for the retail franchises as they were unable to obtain power at the wholesale level other than by purchasing it from defendant.

**4.** Like Vanguard, defendants in *Fishman v. Estate of Wirtz*, 807 F.2d 520, 533 (7th Cir.1986), argued there could be no antitrust injury because "substitution of one competitor for another *does not injure competition.*" The court determined that defendants' refusal to lease their stadium to plaintiffs "effectively cut off all competition for acquisition of the Bulls franchise and injured plaintiffs as a result." *Id.* Although defendants and plaintiff could never meet in head-to-head competition in the relevant market because only one group would be able to buy the Bulls franchise, the court found an antitrust injury explaining, "[t]he antitrust laws are concerned with the competitive process. . . . A healthy and unimpaired competitive process is presumed to be in the consumer interest." *Id.* at 536.

itself in that it is losing revenue and may not be able to remain in business.[5]

Sunshine has standing to bring its monopoly and attempted monopoly claims, for it has alleged that it has suffered an antitrust injury, and that it is a "proper party" to bring a suit against Vanguard.

### 2. Monopoly Power or Dangerous Probability of Monopolization in a Relevant Market

The offense of monopoly under § 2 requires proof that the defendant possesses "monopoly power in a relevant market." *Eastman Kodak Co. v. Image Technical Servs. Inc.*, — U.S. —, —, 112 S.Ct. 2072, 2089, 119 L.Ed.2d 265 (1992) (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 570–571, 86 S.Ct. 1698, 1703–04, 16 L.Ed.2d 778 (1966)). A relevant market is comprised of a product market, those commodities or services that are reasonably interchangeable by consumers for the same purposes, and a geographic market, the area in which sellers of the relevant product effectively compete. Von Kalinowski, § 8.02[2] at 8–10 to 8–12; *see also, Soap Opera Now, Inc. v. Network Pub. Corp.*, 737 F.Supp. 1338, 1344 (S.D.N.Y.1990) (Ward, J.). It is frequently observed that "pronouncement as to market definition is not one of law, but of fact". *Jennings Oil Co. v. Mobil Oil Corp.*, 539 F.Supp. 1349, 1352 (S.D.N.Y.1982) (Werker, J.) (citations omitted). "Monopoly power" is the power either to control prices or to exclude competitors from the relevant market. *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 391, 76 S.Ct. 994, 1004, 100 L.Ed. 1264 (1956); *Kodak*, — U.S. at —, 112 S.Ct. at 2090. Sunshine presents three relevant markets related to its monopoly claim, and Vanguard attacks each.

The offense of attempted monopoly under § 2 requires proof that there is "dangerous probability" that the attempt will succeed. *Volvo N. Am. Corp. v. Men's Int'l Professional Tennis Council*, 857 F.2d 55, 73–74 (2d Cir.1988). Vanguard contends that Sunshine has not defined a relevant market in which Vanguard has a "dangerous probability" of achieving a monopoly. It is appropriate to analyze this argument together with Vanguard's attacks on the three relevant markets named as part of Sunshine's monopoly claim because the "dangerous probability" element of attempted monopoly requires analysis and proof "of the same character, but not the same quantum," as is necessary to plead the monopoly power requirement for a monopoly claim. Von Kalinowski § 9.01[5] at 9–20; *see McGahee v. Northern Propane Gas Co.*, 858 F.2d 1487, 1505, *reh. den. en banc*, 865 F.2d 1274 (11th Cir.1988), *cert. den.* 490 U.S. 1084, 109 S.Ct. 2110, 104 L.Ed.2d 670 (1989).

### First Relevant Market

Sunshine defines its first relevant market as the market for "providing roaming cellular services to Vanguard customers who roam into Pennsylvania 8 and desire to use their cellular telephone while there." Complaint ¶ 19. This market is pertinent to Sunshine's monopoly claim, but is not a part of its attempted monopoly claim.

As part of its monopoly claim, Sunshine alleges that Vanguard has monopoly power over the buying side of this first relevant market. In response, Vanguard claims it is incapable of monopolizing this relevant market as a "matter of law" because it does not hold either of the two FCC licenses in Pennsylvania 8, and is therefore legally prohibited from competing there. However, Vanguard is not "legally" prohibited from competing in Pennsylvania 8 because licensees are permitted to sell their FCC licenses, and Vanguard could acquire either Sunshine's license, or possibly the license of Sunshine's competitor.

Even if not legally barred from competing in this market, Vanguard claims it is incapable of monopolizing the market because it does not provide or sell cellular telephone service within Pennsylvania 8. However, in a monopsony case, as Sun-

---

**5.** In *Disenos*, the court explained that just because another group could also bring a monopoly claim does not mean that the plaintiff's claim is barred. 676 F.Supp. at 1279.

shine is pleading, a plaintiff must prove that the defendant is monopolizing the buying side of a market rather than the selling side. *See United States v. Griffith*, 334 U.S. 100, 108, 68 S.Ct. 941, 946, 92 L.Ed. 1236 (1948) (monopsony power is within the prohibition of § 2); *Christianson v. Colt Industries Operating Corp.*, 766 F.Supp. 670 (C.D.Ill.1991). Although Vanguard asserts it cannot have monopsony power because it does not buy any cellular service in this market for itself or on behalf of its customers, for purposes of a motion to dismiss Sunshine sufficiently alleges Vanguard's monopsony power. Sunshine alleges that Vanguard has "power over the buying side" of this relevant market in that the alternatives to a two-way roaming agreement are not practical or efficient, and that for various reasons listed in the complaint Vanguard has effective control over the terms of roaming services made available to Vanguard customers who roam into Pennsylvania 8. Complaint ¶ 19, 20.

In addition, Vanguard asserts Sunshine's market definition is insufficient because Sunshine does not allege that cellular phones are distinct from other forms of communication, or that roaming cellular service is distinct from nonroaming cellular service. There is no basis for concluding that Sunshine could prove no set of facts in support of these distinctions. *See Conley*, 355 U.S. at 45–46, 78 S.Ct. at 101–102. Indeed, Sunshine's complaint contains numerous paragraphs from which it is possible to infer these distinctions. *See* Complaint ¶¶ 7–14 (entitled "The Cellular Telephone Business"); ¶¶ 15–18 (entitled "Roaming"); ¶ 20 (stating cellular services are "distinct in nature" from conventional telephone service).

■ Vanguard's final argument on this issue is that even if "roaming services in Pennsylvania 8" is a relevant market, the market "as a matter of law" cannot be defined as comprised solely of Vanguard customers. Vanguard relies on *T. Harris*

*Young & Assoc., Inc. v. Marquette Electronics, Inc.*, 931 F.2d 816 (11th Cir.1991), *cert. den.*, —— U.S. ——, 112 S.Ct. 658, 116 L.Ed.2d 749 (1991), in which a supplier for EKG paper alleges that its competitor monopolized the market in EKG paper sold to "hospitals with more than 200 beds." The court held that since evidence revealed EKG paper sold to such hospitals was no different than EKG paper sold to other customers, plaintiff failed to define the product dimension of the relevant market. *Id.* at 825. Vanguard analogizes that because roaming service in Pennsylvania 8 provided to Vanguard customers does not differ at all from roaming service sold to customers of other cellular phone companies, the relevant market cannot be restricted to Vanguard customers. However, the Eleventh Circuit based its decision in *T. Harris* not on law but on evidence. Similarly, Vanguard's analogy is based on a factual assertion as to whether the provision of roaming service for Vanguard customers differs significantly enough from the provision of service to customers of other cellular phone companies who roam into Pennsylvania 8. Such a factual dispute cannot be decided on a motion to dismiss.

More pertinent than the Eleventh Circuit opinion is the *Kodak* opinion in which the Supreme Court rejected the defendant's position that "as a matter of law" a single brand of a product or service can never be a relevant market. —— U.S. at ——, 112 S.Ct. at 2090. Instead, the Court held that the relevant market should be determined by "the choices available to Kodak equipment owners." *Id.* Just as Kodak equipment was alleged to be a distinct brand of product, Sunshine alleges Vanguard cellular phone service is a distinct brand of cellular phone service. *Kodak* directs this court to make a factual inquiry about the choices available to subscribers of that service, Vanguard customers, in determining the relevant market.[6]

---

6. Limiting the relevant market to a particular group of customers may be particularly appropriate in monopsony cases. In *Jayco Systems, Inc. v. Savin Business Machines Corp.*, 777 F.2d

306 (5th Cir.1985), *cert. den.* 479 U.S. 816, 107 S.Ct. 73, 93 L.Ed.2d 30 (1986), plaintiff alleged that defendant attempted to monopolize the copier business of one customer, the State of

### Second Relevant Market

Sunshine identifies the market for "cellular telephone services in Pennsylvania 8" as a second relevant market. Complaint ¶ 21. Sunshine includes this second market as part of its monopoly claim alleging that Vanguard is "unlawfully leveraging" its monopsony power in the first relevant market into an "adjacent market," the relevant market of cellular telephone services in Pennsylvania 8. Complaint ¶ 53. This market is also the market which Sunshine accuses Vanguard of attempting to monopolize. Complaint ¶ 55.

Because Sunshine is asserting a monopoly leveraging theory for its monopoly claim, Vanguard does not contend that Sunshine must prove Vanguard has attained monopoly power in the second market. *See* Defendant's Reply Memorandum at 4–9, 17–18.[7] However, Vanguard seems to think Sunshine must prove that at some point some firm could exercise monopoly power in the second market for it to be considered a relevant market. According to Vanguard, monopoly power is the ability to raise prices above the competitive level, and no firm could ever attain monopoly power in the second market because the federal regulation requiring two cellular providers in each service area ensures that there will always be more than one firm competing to provide service.

The only case relied on by Vanguard for this argument is *H.J., Inc. v. Int'l Tel. & Tel. Corp.*, 867 F.2d 1531, 1537 (8th Cir. 1989), but the test in that case is aimed at isolating the "product" component of the relevant market definition, not at determining whether defendant has "monopoly power." The Eighth Circuit explained that a relevant market is "any grouping of sales whose sellers, if unified by a hypothetical cartel or merger could raise prices significantly above the competitive level." *Id.* The court then determined that submersible liquid pumps could not be a distinct relevant market because if prices for such pumps were raised, farmers would purchase other kinds of pumps. *Id.* at 1537–1538. By contrast, Sunshine satisfies the test in *H.J.;* Sunshine alleges that cellular phone service is distinct from conventional telephone service. Complaint ¶ 20. Therefore, since conventional phone service is not a substitute for cellular phone service, it would be possible for a group of cellular phone service companies to raise the price for cellular service above the competitive level. In any event, the federal regulation requiring two cellular providers per service area does not preclude one of those providers from becoming the dominant provider such that it attains monopoly power.[8]

---

Texas, and defined the relevant market as low and medium volume copiers for that customer's copier business. The 5th Circuit explained that "as a matter of common sense a single purchaser of a product cannot generally be considered a relevant market, lest we wish to clothe each and every sale with an antitrust suit." *Id.* at 320. However, the court noted, "We hazard the suggestion that a single purchaser could not be considered a relevant market unless plaintiff made some showing of the purchaser's monopsony power." *Id.* at n. 46.

7. Under a monopoly leveraging theory, plaintiff must prove that the defendant has monopoly power in the first market, and that it is using that power as a lever to secure competitive advantages in a second market, irrespective of the degree of market power actually achieved by the defendant in the second market. *See Grand Light & Supply Co. v. Honeywell, Inc.*, 771 F.2d 672, 681 (2d Cir.1985); *Soap Opera Now,* 737 F.Supp. at 1344. However, the Second Circuit has pointed out that its monopoly leveraging theory was dictum and involved a "tying" claim which may suggest the theory is inappli-

cable to non-"tying" claims. *See Twin Laboratories, Inc. v. Weider Health & Fitness,* 900 F.2d 566, 570–571. Sunshine does not assert a tying claim.

8. As in its attack on Sunshine's antitrust injury theory, Vanguard erroneously attacks Sunshine's relevant market definition based on "competitive structure". Here, Vanguard contends competition must be structured such that plaintiff and defendant are engaged in "head-to-head" competition in the relevant market, and that it is not in such a competition with Sunshine because it does not now sell cellular services in Pennsylvania 8. However, in *Otter Tail* since only one party could be awarded a franchise, they could never compete head-to-head in the relevant market of providing retail electricity. *See* 410 U.S. at 377, 93 S.Ct. at 1029. Furthermore, Sunshine has alleged that it and Vanguard are engaged in a form of competition with respect to the second market. In essence, the parties are competing to determine whether Sunshine will continue to have access to the market, or whether Vanguard will gain access

■ Vanguard also contests Sunshine's attempted monopoly claim. According to Vanguard, proof of "dangerous probability of success" requires Sunshine to allege that Vanguard controls a sufficiently high market share in the second relevant market. However, "[m]arket share is a primary indicator of existence of a dangerous probability of success, but not the sole one." *Twin Laboratories*, 900 F.2d at 570.[9] Other indicators of "dangerous probability" include the strength of the competition, the probable development of the industry, barriers to entry, the nature of the anti-competitive conduct and elasticity of consumer demand. *See e.g., International Distribution Centers, Inc. v. Walsh Trucking Co.*, 812 F.2d 786, 792 (2d Cir. 1987), *cert. den.*, 482 U.S. 915, 107 S.Ct. 3188, 96 L.Ed.2d 676 (1987).

■ Sunshine's complaint states that there is a "dangerous probability that Vanguard will succeed in its attempt to monopolize." Complaint ¶ 56. In addition, Sunshine alleges that Vanguard controls 60% to 70% of roaming customers available to Sunshine in Pennsylvania 8. *Id.* at ¶ 19(a). Since roaming service is a subset of cellular service, Sunshine's figure is not a measure of Vanguard's market share of all cellular services in Pennsylvania 8. Vanguard claims its market share of the larger market of all cellular services cannot be high enough to constitute a "dangerous probability". However, it is not possible at this stage, without any discovery, to rule out the possibility that the "other indicators" of "dangerous probability" would be sufficient. Sunshine has alleged enough about Vanguard's business intentions and success in the Pennsylvania Supersystem to make it impossible to conclude that Sunshine could prove no set of facts in support of "dangerous probability" which would entitle it to relief. *See Conley*, 355 U.S. at 45–46, 78 S.Ct. at 101–102.

### Third Relevant Market

■ Sunshine's third relevant market is the market for cellular telephone services within the Pennsylvania · Supersystem. Complaint ¶ 20. Sunshine believes this market is relevant to its monopoly leveraging theory to demonstrate how Vanguard is able to exercise monopsony power in the first relevant market.

According to Vanguard, Sunshine has not indicated Vanguard's market share in any of the local markets that comprise the Pennsylvania Supersystem, nor has Sunshine alleged any particular market characteristics that point to Vanguard's monopoly power in the third relevant market. However, Sunshine's complaint contains allegations which are sufficient to satisfy the monopoly power requirement at this stage of the litigation. Sunshine alleges that by virtue of its business and marketing strategies Vanguard enjoys a "competitive advantage" over wireline competitors in the Pennsylvania Supersystem and "market power" with respect to cellular telephone users therein. Complaint ¶ 20. Sunshine contends that because of the overall superiority of the service Vanguard provides, or at least its success in convincing customers of its superiority, that Vanguard can "get away with ... denying its customers access to roaming services on an efficient basis when they travel within Pennsylvania 8." *Id.*

### 3. Anticompetitive Conduct

■ As part of both its monopoly claim and its attempted monopoly claim Sunshine must prove Vanguard engaged in anticompetitive conduct. The second element of a monopoly claim requires proof of the defendant's "willful acquisition or maintenance of monopoly power," or proof that the defendant used its monopoly power "to

---

to the market by displacing Sunshine. This form of competition is sufficient. *See Fishman*, 807 F.2d at 520 (relevant market may be "the market to which access is sought").

**9.** Vanguard is correct that the Second Circuit has stated that a "threshold showing for a successful attempted monopolization claim is suffi-

cient market share by the defendant;" however, the opinion in which this statement was made involved an appeal of a summary judgment decision which requires much more factual proof than a motion to dismiss. *Twin Laboratories*, 900 F.2d at 570.

foreclose competition, to gain a competitive advantage, or to destroy a competitor." *Kodak,* —— U.S. at ——, 112 S.Ct. at 2090. To satisfy this requirement the plaintiff must show that the defendant's conduct is "exclusionary," "anticompetitive," or "predatory." *See Aspen Skiing Co. v. Aspen Highlands Skiing Corp.,* 472 U.S. 585, 602, 105 S.Ct. 2847, 2857, 86 L.Ed.2d 467 (1985). As for an attempted monopoly claim, one of the elements of such a claim is proof that the defendant "engaged in anticompetitive or exclusionary conduct." *See e.g., Volvo,* 857 F.2d at 73–74.

Sunshine's monopoly claim alleges as Vanguard's anticompetitive conduct that Vanguard has "refused to deal and cooperate with Sunshine on commercially reasonable and non-discriminatory terms." Complaint ¶ 53. In response, Vanguard accuses Sunshine of misinterpreting the antitrust laws as imposing a general obligation that all companies must deal with each other. Sunshine nowhere makes such an assertion, rather Sunshine asserts that Vanguard's purpose in refusing to enter into a two-way agreement was to "gain a competitive advantage" in the second relevant market. Vanguard may not refuse to deal with Sunshine if its refusal is motivated by anticompetitive animus. *See Aspen,* 472 U.S. at 601–602, 105 S.Ct. at 2856–2857; *Soap Opera Now,* 737 F.Supp. at 1343.

Vanguard also tries to limit "refusal to deal" claims to the factual scenario in *Aspen.* However, there is no suggestion in *Aspen* that the decision be confined to its facts. Rather, the Supreme Court explained that to determine whether defendant's refusal to deal can be characterized as "anticompetitive" and thus in violation of § 2, a court must examine the conduct's effect on the plaintiff and consumers, and must determine whether the conduct "impaired competition in an unnecessarily restrictive way" or was an "attempt to exclude rivals on some basis other than efficiency". *Id.* 472 U.S. at 605, 105 S.Ct. at 2859; *see also, Kodak,* —— U.S. at ——, n. 32, 112 S.Ct. at 2091, n. 32 (interpreting *Aspen* to mean right to refuse to deal exists "only if there are legitimate competitive reasons for the refusal.").

Sunshine's attempted monopoly claim alleges "denial of an essential facility" as Vanguard's anticompetitive conduct. According to Sunshine, the two-way roaming agreement between Vanguard and Sunshine constitutes an essential facility which Vanguard has denied Sunshine for predatory purposes and without any legitimate business purpose. Complaint ¶ 55. Vanguard contends that a two-way roaming agreement cannot be an "essential facility," because "no judicial opinion has ever held that an agreement to provide billing services for another company is an essential facility." Defendant's Memorandum at 20–21. Of course, no decision has dealt with just the same factual scenario as alleged by Sunshine, but this reality does not mean this court is foreclosed from deciding whether such an agreement is an essential facility. Indeed, services have been held to be essential facilities. *See, e.g., American Tel. & Tel. Co. v. North American Industries, Inc.,* 772 F.Supp. 777, 785 (S.D.N.Y. 1991), *amd on other grounds,* 783 F.Supp. 810 (1992) (Mukasey, J.) (on motion to dismiss, plaintiff adequately alleged that defendant's central office services—the provision of dial tones and interconnection services used to prevent fraudulently billed telephone calls from being made—were essential facilities).

In addition, Vanguard claims Sunshine does not satisfy the pleading requirements for two of the four elements of an "essential facility." The four elements are 1) control of the essential facility by a monopolist; 2) a competitor's inability practically or reasonably to duplicate the essential facility; 3) denial of the use of the facility to a competitor; and 4) the feasibility of providing the facility. *Delaware & Hudson Rwy. Co. v. Consol. Rail Corp.,* 902 F.2d 174, 179 (2d Cir.1990), *cert. den.,* —— U.S. ——, 111 S.Ct. 2041, 114 L.Ed.2d 125 (1991).

■ Vanguard claims Sunshine must prove "severe hardship" in duplicating the two-way roaming agreement in order to satisfy the second element of an "essential facility" claim. However, the plaintiff

must merely demonstrate that "duplication of the facility would be economically infeasible." *Twin Laboratories*, 900 F.2d at 568. Sunshine has made such an allegation. *See* Complaint ¶¶ 2, 15, 19.

 With respect to proving the third element of an "essential facility," Vanguard claims it has not refused to enter into "any" agreement with Sunshine on "any" terms. However, there need not be such a complete refusal by Vanguard in order to find that denial of an essential facility occurred; it is sufficient if the terms of Vanguard's offer to deal are "unreasonable." *See Delaware & Hudson*, 902 F.2d at 180–81. Sunshine has plead that the terms on which Vanguard would enter an agreement are unreasonable. Complaint ¶ 40–44.

 Finally, Vanguard contends that in order for a "refusal to deal" or "denial of an essential facility" to be regarded as "anticompetitive" conduct, the defendant must be engaged in head-to-head competition. Although it is true that the plaintiff and defendant must be "competitors" for defendant's act to be considered anticompetitive, the parties do not have to be engaged in head-to-head competition. If Sunshine and Vanguard were engaged in entirely different businesses they would not be "competitors," and it would be impossible to construe Vanguard's alleged refusal to deal or its alleged denial of an essential facility as having an "anticompetitive" motive.[10] However, as alleged by Sunshine, Vanguard and Sunshine are "competitors" because they are in the same line of business, and Vanguard's alleged refusal to deal or denial of an essential facility is for the purpose of enhancing Vanguard's power in the relevant market of providing cellular services in Pennsylvania 8.

**4. Specific Intent to Monopolize**

 Specific intent is a necessary element of an attempted monopoly claim, and may be proven by direct evidence, or inferred from the defendant's predatory or anticompetitive conduct. *Kelco Disposal, Inc. v. Browning–Ferris Industries of Vermont, Inc.*, 845 F.2d 404, 408 (2d Cir. 1988), *aff'd on other grounds* 492 U.S. 257, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989); *Volvo*, 857 F.2d at 74. Vanguard claims Sunshine has not alleged either direct or indirect evidence sufficient for specific intent. However, for purposes of a motion to dismiss, Sunshine's quotations from Vanguard business documents of its intent to expand into contiguous markets coupled with Sunshine's allegations of anticompetitive conduct are sufficient to allege specific intent. *See* Complaint ¶ 23, 56.

For the foregoing reasons, Vanguard's motion to dismiss Sunshine's § 2 Sherman Act monopoly and attempted monopoly claims pursuant to Rule 12(b)(6), F.R.Civ. P., is denied.

**B. *State Antitrust Claim***

According to Vanguard, since Pennsylvania's common law of antitrust is coextensive with the Sherman Act, Sunshine's second claim alleging violations of Pennsylvania antitrust common law should be dismissed pursuant to Rule 12(b)(6), F.R.Civ. P., for the same reasons Vanguard asserted in its motion to dismiss Sunshine's § 2 claims. However, Sunshine's § 2 claims survived Vanguard's motion to dismiss. Therefore, Vanguard's motion to dismiss Sunshine's Pennsylvania antitrust common law claim is denied.

**C. *Tortious Interference with Business Relations***

 In order to state a claim for tortious interference with business relations

---

**10.** *See e.g., Official Airline Guides, Inc. v. FTC,* 630 F.2d 920, 925–926 (2d Cir.1980), *cert. den.,* 450 U.S. 917, 101 S.Ct. 1362, 67 L.Ed.2d 343 (1981) (since monopolist in airline schedule publishing industry was engaged in a different line of commerce from that of air carriers, its refusal to publish the air carriers' flight schedules could not be regarded as a refusal to deal or denial of essential facility); *Ferguson v. Greater Pocatello Chamber of Commerce, Inc.,* 848 F.2d 976, 982–983 (9th Cir.1988) (college was not in business of producing trade shows, so it could not be accused of denying trade show producers an essential facility when it refused to rent them its stadium for their trade shows).

under Pennsylvania law, a plaintiff must plead facts showing (1) a prospective business or contractual relation; (2) defendant's purpose or intent to harm the plaintiff by preventing the relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) actual damage resulting from defendant's conduct. *See Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 412 A.2d 466 (1979).

■■ The first element of this tort requires Sunshine to show that it is "reasonably probable" that a business relationship between it and third parties, Vanguard customers, would have occurred. *See Glenn v. Point Park College*, 441 Pa. 474, 272 A.2d 895, 898–99 (1971); *General Sound Tel. Co. v. AT & T Communications, Inc.*, 654 F.Supp. 1562 (E.D.Pa.1987). Vanguard contends that Sunshine's allegations amount to no more than "mere hope" of such a relationship with Vanguard's customers. However, it is reasonable to infer from the complaint that if a two-way roaming agreement is entered into, Sunshine is likely to increase substantially its provision of roaming service to Vanguard customers.

■■ As an additional attack on Sunshine's satisfaction of the first element, Vanguard claims since roaming agreements are executed between carriers, not between carrier and customers, it is "logically impossible" for Sunshine to enter into a "roaming agreement" with Vanguard customers. However, failure to enter a roaming agreement is the manner in which Vanguard is interfering with Sunshine's prospective business relations with Vanguard consumers. It is not a "roaming agreement" but provision of roaming services that is the prospective business relationship Sunshine desires to enter into with Vanguard customers and with which Sunshine alleges Vanguard interfered. *See Rutherfoord v. Presbyterian–University Hospital*, 612 A.2d 500 (Pa.Super.1992).

■■ Vanguard attacks Sunshine's satisfactory pleading of the fourth element of this tort by contending that since Sunshine currently provides roaming service to some Vanguard customers, Vanguard cannot have excluded Sunshine from directly dealing with Vanguard customers. However, the possibility that some Vanguard customers may have overcome problems created by Vanguard's refusal to enter into a two-way roaming agreement does not detract from the possibility that Vanguard's conduct has interfered with Sunshine's ability to enter into business relations with the majority of Vanguard customers who have been denied automatic access to Sunshine's system. *See Adler, Barish, Daniels, Levin and Creskoff v. Epstein*, 482 Pa. 416, 431, 393 A.2d 1175 (1978).

Sunshine's Complaint contains all elements for asserting tortious interference with business relations. Sunshine alleges that Vanguard has, without business justification, purposely caused third parties, Vanguard customers in the Pennsylvania Supersystem who roam into Sunshine's territory, not to enter into business relations with Sunshine, i.e. not to place calls through Sunshine's cellular system, thus denying Sunshine substantial roaming revenues. Complaint ¶ 60.

For the foregoing reasons, Vanguard's motion to dismiss Sunshine's tortious interference with business relations claim pursuant to Rule 12(b)(6), F.R.Civ.P., is denied.

### III. MOTION TO STRIKE

■■ Rule 12(f), F.R.Civ.P., allows the court to strike any "redundant, immaterial, impertinent or scandalous matter" from any pleading. 28 U.S.C.A. Rule 12(f) (1992). Vanguard requests that Sunshine's allegations relating to its assertion that Vanguard has engaged in "baseless and sham" litigation against Sunshine be struck because Sunshine does not claim that the litigation amounted to a tort under Pennsylvania law, nor does Sunshine request any relief relating to the litigation.

Motions to strike are not favored, and will be denied unless the allegations have no possible relation to the controversy. *See Laverpool v. New York City Transit Authority*, 760 F.Supp. 1046, 1061 (E.D.N.Y.1991). If there is any doubt whether the challenged matter may raise an issue of fact or law, the motion to strike

should be denied, and the sufficiency of the allegations left for the adjudication on the merits. Wright & Miller, Federal Practice and Procedure: Civil 2d § 1382 at 697–700. Although Sunshine does not assert a claim for malicious prosecution or wrongful use of civil process arising out of the litigation against it, Sunshine maintains that it is seeking to recover the legal fees it was forced to incur in that litigation as an element of its damages for violation of Pennsylvania's antitrust law. Plaintiff's Brief at 62. Sunshine claims the allegations have evidentiary value as to Vanguard's specific intent and anticompetitive behavior. *See, .e.g., Grip–Pak, Inc. v. Illinois Tool Works, Inc.*, 694 F.2d 466 (7th Cir. 1982), *cert. den.*, 461 U.S. 958, 103 S.Ct. 2430, 77 L.Ed.2d 1317 (1983) (sham litigation may form a predicate for Sherman Act § 1 violation even if not tortious).

For the foregoing reasons, Vanguard's motion to strike is denied.

## IV. MOTION TO TRANSFER VENUE

Vanguard moves to transfer venue pursuant to 28 U.S.C. § 1404(a) from the Southern District of New York to either North Carolina or Pennsylvania. Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

The relevant criteria in deciding a motion to transfer include: (1) the convenience of the parties; (2) the convenience of the witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel the attendance of unwilling witnesses; (5) the interests of justice; (6) other practical problems making trial of a case expeditious and inexpensive. *Seagoing Uniform Corp. v. Texaco, Inc.*, 705 F.Supp. 918, 935 (S.D.N.Y.1989) (Motley, J.); *Schieffelin & Co. v. Jack Co. of Boca, Inc.*, 725 F.Supp. 1314, 1321 (S.D.N.Y.1989) (Leisure, J.).

Since Sunshine and its partners are not located in this district, Vanguard claims

Sunshine is equally inconvenienced litigating in any of the districts. Therefore, Vanguard argues for transfer of venue to North Carolina where Vanguard's corporate headquarters is located, or to Pennsylvania, the locus of Vanguard's business. However, even when the plaintiff is not a resident of the chosen forum, his choice is still entitled to significant weight. *Motown Record Corp. v. Mary Jane Girls, Inc.*, 660 F.Supp. 174, 175 (S.D.N.Y.1987) (Sweet, J.). Furthermore, Vanguard has not shown that North Carolina would be more convenient for Sunshine which is not located in North Carolina and conducts none of its business there. Since Vanguard does business in this district, it cannot contend that it would be substantially inconvenienced by litigating here. *See, e.g., Reid Dominion Packaging, Ltd. v. Old Tyme Softdrinks, Inc.*, 661 F.Supp. 555, 556 (W.D.N.Y.1987).

Vanguard claims this district is inconvenient for all of its witnesses because they are all located in North Carolina or Pennsylvania. However, Sunshine is prepared to take depositions in North Carolina of any employees located there who do not travel regularly to New York. Plaintiff's Venue Brief at 16. There is no doubt that a trial in either of defendant's two suggested districts would be less of a business interruption for Vanguard, but the inconvenience of testifying in New York will not be insufferable since Vanguard's witnesses need only be present while testifying. *See Star Lines*, 442 F.Supp. at 1207.

Access to documents and other proof is not a persuasive factor in favor of transfer without proof that documents are particularly bulky or difficult to transport, or proof that it is somehow a greater imposition for defendant to bring its evidence to New York than for plaintiff to bring its evidence to North Carolina or Pennsylvania. *See Stinnes Interoil, Inc. v. Apex Oil Co.*, 604 F.Supp. 978, 983 (S.D.N.Y.1985) (Leisure, J.). Vanguard has not proffered evidence suggesting either contingency. Sunshine is willing to pay the cost of transporting them to New York, and is willing to accept copies. Plaintiff's Venue Brief at 16.

Vanguard contends there is a "much greater likelihood" that witnesses will be within the subpoena power of a Pennsylvania court as compared to this district where "only the extreme eastern edge of the alleged Pennsylvania supersystem" is within the subpoena power of this court. However, significant portions of the Supersystem do lie in this District or within the subpoena power of this court. Estess Aff. ¶¶ 8–10.

According to Vanguard, the interests of justice require transfer because this case is likely to be disposed of more quickly in either North Carolina or Pennsylvania. However, if need be, the case can be handled here on an expedited basis. *See Dow Jones & Co. v. Board of Trade,* 539 F.Supp. 190, 192–93 (S.D.N.Y.1982) (Carter, J.) ("docket congestion is not considered a dispositive factor in this court.").

Finally, Vanguard asserts it would be more practical to adjudicate this case in Pennsylvania given Sunshine's Pennsylvania state law claims. However, resolution of Sunshine's Pennsylvania law claims does not require the expertise of a Pennsylvania court. *See Stinnes,* 604 F.Supp. at 983 (fact that Missouri law controls not relevant because Missouri abides by Uniform Commercial Code which is also prevailing law in New York). Vanguard admits that Pennsylvania antitrust laws are identical to federal antitrust laws, and Pennsylvania law on tortious interference of business relations is based on the Restatement (Second) of torts. *Rutherfoord,* 612 A.2d at 507 (Pennsylvania adopted Restatement Second definition for tortious interference with business relations).

A § 1404(a) motion should not be granted if all transfer would accomplish is to shift the inconveniences from one side to the other. *Stinnes,* 604 F.Supp. at 984.

Transfer of venue in this case to either North Carolina or Pennsylvania would merely shift the inconveniences from Vanguard to Sunshine.[11]

For the foregoing reasons, Vanguard's motion to transfer venue is denied.

IT IS SO ORDERED.

---

11. In addition, although Vanguard argues that Sunshine's choice of forum is not entitled to deference, a defendant's burden on a motion to transfer is "especially heavy in antitrust suits, where plaintiff's choice of forum is entitled to particular respect." *Star Lines, Ltd. v. Puerto Rico Maritime Shipping Auth.,* 442 F.Supp. 1201, 1207 (S.D.N.Y.1978) (Carter, J.); *see also, Expoconsul Int'l., Inc. v. A/E Systems, Inc.,* 711 F.Supp. 730, 735 (S.D.N.Y.1989) (Walker, J.).

There is strong enough connection to this district to warrant deference to Sunshine's choice. Part of Vanguard's Pennsylvania Supersystem is located here, so potential customers of Sunshine's roaming service are located here. Sunshine alleges that Vanguard's refusal to deal and denial of an essential facility have precluded it from reaching these customers, and that this lack of access may force it out of business.