**DAVE GUARDALA MOUTHPIECES, INC., Plaintiff,**

v.

**SUGAL MOUTHPIECES, INC., Medea International, Inc., Gary Sugal, and Phillip Barone, Defendants.**

**No. 91 Civ. 2529 (MEL).**

United States District Court, S.D. New York.

Dec. 17, 1991.

**336**

Leonard Kreinces, Great Neck, N.Y., for plaintiff.

David A. Schechter, Howard M. Myers, Law Offices of David A. Schechter, Providence, R.I., Jerome Tarnoff, Berger, Steingut, Tarnoff & Stern, New York City, for defendants Gary Sugal and Sugal Mouthpieces, Inc.

LASKER, District Judge.

The plaintiff Dave Guardala Mouthpieces, Inc. ("Guardala Mouthpieces"), a New York corporation which produces saxophone mouthpieces, brings this suit claiming trademark/tradedress infringement and unfair competition. The complaint alleges that defendant Sugal Mouthpieces has copied the appearance and design of the Guardala saxophone mouthpiece. Defendants Sugal Mouthpieces, Inc. ("Sugal Mouthpieces") and Gary Sugal ("Sugal"), who reside or are based in Rhode Island (together, the "Sugal defendants"),[1] move to dismiss the complaint on jurisdictional and venue grounds.

**I.**

Plaintiff alleges that the Sugal defendants have copied the design and appearance of the Dave Guardala mouthpiece in producing the Sugal saxophone mouthpiece in an attempt to capitalize on the Guardala mouthpiece's prestige and popularity. The Guardala mouthpiece is asserted to be a well-established and highly respected saxophone mouthpiece priced at the high end of the market, ranging between $350 to $750. In addition, according to plaintiff, Sugal and his company also plagiarized Guardala Mouthpieces' advertising in order to increase consumer confusion of the two products.

Sugal formed Sugal Mouthpieces, Inc., a corporation organized and existing under the laws of Rhode Island, in the fall of 1990, with the purpose of engaging in the manufacture and sale of high quality saxophone mouthpieces. Sugal Mouthpieces, Inc. maintains no offices outside the State of the Rhode Island, nor does it have telephone listings or other personnel employed outside the State of Rhode of Island. However, it appears that Sugal has targeted a national market. Sugal has conceded that he has attended trade conferences in California and Germany and has advertised the Sugal mouthpieces in various national music publications. In addition, plaintiff has alleged that Sugal specifically sought to sell his product in New York and made sales presentations in New York on at least two occasions.

Sugal does not deny that Sugal mouthpieces have been sold to New York residents and retailers—it appears that at least thirty-eight of them have been—, but contends that these sales were not conducted in New York, that the products were merely shipped there, and that therefore these sales do not constitute a sufficient basis to establish long-arm jurisdiction.

**II.**

■ To survive a motion to dismiss plaintiffs need only make a prima facie showing

---

1. Defendants Medea International, Inc. ("Medea") and Phillip Barone ("Barone") have yet to make an appearance in this proceeding.

that jurisdiction exists. *Briley v. Blackford,* 1990 WL 124341, 1990 U.S.Dist. LEXIS 10,967 (S.D.N.Y.1990) (Leval, J.).

■ The governing law as to personal jurisdiction is the law of the forum. Defendants argue that they are not subject to jurisdiction under any of the provisions of the New York "long arm" statute. *See* N.Y.Civ.Prac.L. & R. ("CPLR") § 302(a)(1)–(4). Plaintiff contends that jurisdiction exists under CPLR § 302(a)(1), the transacting business provision, and § 302(a)(2), the tortious conduct provision. We find that jurisdiction exists under CPLR § 302(a)(2), and thus do not address the jurisdictional argument with respect to CPLR § 302(a)(1).[2]

■ In cases of trademark infringement, to establish jurisdiction under 302(a)(2), a plaintiff must demonstrate that the wrong under trademark law—the "passing off"—occurred within the jurisdiction. "The offering of infringing goods for sale within the state constitutes a tortious act under Section 302(a)(2), even without actual resulting sales." *German Educ. Television Network, Ltd. v. Oregon Public Broadcasting Co.,* 569 F.Supp. 1529, 1532 (S.D.N.Y.1983) (citing *Honda Associates, Inc. v. Nozawa Trading, Inc.,* 374 F.Supp. 886, 889 (S.D.N.Y.1974)). The key inquiry therefore is whether sales of Sugal mouthpieces were conducted in New York.

■ Plaintiff has made a prima facie case that Sugal sold or has attempted to sell the Sugal mouthpiece to at least three stores in New York—Manny's Musical Instruments and Accessories, Inc. located in Manhattan ("Manny's"), Sam Ash Music Store located in Manhattan ("Sam Ash") and Rod Baltimore Music Co., Inc. located in Brooklyn ("Rod Baltimore")[3]—and accordingly jurisdiction exists over the Sugal defendants in this District.[4]

The evidence of record indicates that Sugal solicited purchases of Sugal mouthpieces in New York by telephone, by direct mail, and by advertising in national music publications. Marc Bernstein, a buyer of woodwind products for Sam Ash, and Henry Goldrich, the president of Manny's, assert in affidavits in opposition to this motion and in support of this motion, respectively, that Sugal sent them promotional material and an invitation to tour the Sugal mouthpieces factory in Providence, Rhode Island, in the fall of 1990. Furthermore, Marc Bernstein states in his affidavit that Sugal called him at least five or six times between September 1990 and January 1991, to try to interest him in the Sugal mouthpiece, and that on February 8, 1991, Sugal himself came to New York and made a sales presentation to Sam Ash personnel.[5] Indeed, Sugal admits visiting Manny's, Sam Ash and Rod Baltimore on February 8, 1991, although he claims that these were only social visits or visits made only to dispel rumors concerning Sugal's alleged infringement of the Guardala mouthpiece. In any event, plaintiff is only required to make a prima facie showing of jurisdiction

**2.** CPLR 302(a)(2) provides in relevant part:
   (a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
   . . . .
   (2) commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act . . .

**3.** Both Manny's and Sam Ash have purchased Sugal mouthpieces. Manny's placed its first order for Sugal mouthpieces in November 1990—it ordered twelve mouthpieces. In early 1991, Manny's placed another order for twelve mouthpieces. Since then, Manny's has placed at least three other orders. Sam Ash purchased four Sugal mouthpieces in early 1991.

**4.** For purposes of this motion to dismiss, when doubts exist, they are to be resolved in favor of plaintiff, *see e.g., Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55 (2d Cir.1985), and thus we hold that plaintiff has made out a prima facie case of tradedress infringement, satisfying the "tortious act" requirement of Rule 302(a)(2).

**5.** In addition, Jennifer Bernstein, a buyer for Rod Baltimore, has stated in an affidavit in opposition to the motion, that Sugal also made a sales presentation to Rod Baltimore personnel on that same date. However, her statements are placed in some doubt by the fact that other personnel at Rod Baltimore have submitted affidavits denying that Sugal attempted to sell Rod Baltimore any Sugal mouthpieces during his visit on February 8, 1991.

on a motion to dismiss and we find that such a showing has been made.

Although Sugal states by affidavit in the most positive terms that neither he nor any representative of Sugal Mouthpieces has ever made a sales presentation to any potential buyer in the State of New York, he concedes that at least thirty-eight Sugal mouthpieces have been shipped to New York, that he has placed ads for the Sugal mouthpiece in national music publications,[6] and that he has been in contact with several music stores in the New York area. That admission together with the statements of Henry Goldrich of Manny's, Marc Bernstein of Sam Ash and Jennifer Bernstein of Rod Baltimore, puts the ball across the line.

In sum it appears that both Sugal Mouthpieces and Sugal, in his individual capacity, offered the allegedly offending Sugal mouthpiece for sale in the State of New York. In such circumstances, the Court has personal jurisdiction over them.

### III.

Venue is based on 28 U.S.C. § 1391. The Sugal defendants also claim that venue is improper in this District. However, § 1391(c) states that "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." § 1391(c) now essentially equates jurisdiction with venue for corporate defendants. Thus in light of our ruling on jurisdiction above, venue is proper in this district for defendant Sugal Mouthpieces, Inc.

As to defendant Sugal, in his individual capacity, under § 1391(b)(2) a civil action can be brought in any "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." Based on our findings that Sugal targeted New York as a market and made an active effort to market the Sugal mouthpiece there, we find that a substantial part of the events giving rise to the claim oc-

curred in New York and therefore venue is proper in this District for Sugal.

Thus the defendants' motion to dismiss is denied.

So ordered.

---

**6.** The advertisements run by Sugal read: "Ask for Sugal Mouthpieces at Manny's–NY, Saxophone Shop–Evanston, ILL., Woodwind & Brasswind–Southbend, IND" or "Visit your local dealer or write/call us directly."