**JAGUAR CARS, LTD. and The Jaguar Collection, Ltd., Plaintiffs,**

v.

**NATIONAL FOOTBALL LEAGUE, National Football League Properties, Inc. and Jacksonville Jaguars, Ltd., Defendants.**

No. 94 Civ. 3529 (SS).

United States District Court, S.D. New York.

Jan. 25, 1995.

Pattishall, McAuliffe, Newbury, Hilliard & Geraldson, Chicago, IL (David C. Hilliard, Douglas N. Masters, Kimberly W. Alcantara, of counsel), Hughes Hubbard & Reed, New York City (Jerome G. Shapiro, Nicolas Swerdloff, of counsel), Ford Motor Co., Office of Gen. Counsel, Dearborn, MI (Clifford L. Sadler, Charles H. Ellenbrock, of counsel), for plaintiffs.

Debevoise & Plimpton, New York City (Bruce P. Keller, Lorin L. Reisner, Naomi Wolfensohn, of counsel), for defendants.

## Opinion and Order

SOTOMAYOR, District Judge.

In this trademark action, defendants National Football League ("NFL"), National Football League Properties, Inc. ("NFLP"), and Jacksonville Jaguars, Ltd. ("JJL"), seek to dismiss or transfer this case pursuant to 28 U.S.C. §§ 1406(a) and 1404(a). For the reasons discussed below, the motions are denied.

### Background

In the early 1990's the NFL, an unincorporated New York association, solicited applications for two new professional football franchises. Numerous corporate entities, in conjunction with their home cities, competed for the franchises. JJL, through its corporate predecessor Touchdown Jacksonville!, Ltd. ("Touchdown Jacksonville"), sought a franchise to be located in Jacksonville, Florida. JJL is a Florida limited partnership with offices located in Jacksonville, Florida.

To rally the support of the Jacksonville community, Touchdown Jacksonville conducted a "Name Our Team" contest in 1991. The contest received entries from 172 contestants. *See* Declaration of David M. Seldin ("Seldin Decl."), sworn to October 14, 1994, at ¶ 5. On the basis of these entries, a panel composed of JJL representatives, members of the local media, and the Mayor of Jacksonville, selected the name "Jacksonville Jaguars" as the winner. The name was selected in part because the Jacksonville Zoo was the home to North America's oldest Jaguar, as well as for the symbolic value of that animal's speed and strength. *Id.* at ¶ 6. On December 18, 1991, Touchdown Jacksonville filed a federal registration application for the "Jacksonville Jaguars" trademark. Supplemental Declaration of Gary M. Gertzog ("Supp. Gertzog Decl."), sworn but undated, at Ex. C.

On April 3, 1992, JJL President David M. Seldin wrote Jaguar Cars, Ltd. ("Jaguar Cars"), seeking its sponsorship of the proposed team. *See* Seldin Aff. at Ex. B. Jaguar Cars is a British Corporation, with offices in Mahwah, New Jersey. On April 30, 1994, Jaguar Cars wrote JJL, informing it that Jaguar Cars was not in a position to offer any corporate sponsorships. *See id.* at Ex. C.

On November 3, 1992, the United States Patent and Trademark Office issued a notice that no successful opposition had been filed with regard to Touchdown Jacksonville's trademark application. On December 10, 1992, the Florida Department of State issued a trademark registration to Touchdown Jacksonville for the Jacksonville Jaguar mark. On September 16, 1993, and October 21, 1993, however, the NFL filed applications before the United States Patent and Trademark Office to register the name "Jacksonville Jaguars" and a jaguar logo. *See* Declaration of Kimberly M. Alcantara ("Alcantara Decl."), sworn to August 3, 1994, at Ex. A. In both applications, NFL Executive Vice President and League Counsel Jay Moyer declared that he believed the NFL was the owner of the marks to be registered. *Id.* On November 30, 1993, the NFL awarded a professional football franchise to JJL. Also on November 30, 1993, the NFL and JJL entered into a trust agreement (the "Trust Agreement"). The Trust Agreement provided that JJL owns "the trademarks, service marks, and trade names used in connection [with the operation of the team]....." *See* Supp. Gertzog Decl. at Ex. F. The Trust Agreement also required JJL to grant "the exclusive right to use Club Marks for commercial purposes" to NFLP. *See id.*

On May 13, 1994, Jaguar Cars and The Jaguar Collection, Ltd.[1] ("Jaguar Collection"), filed the instant action (the "New York Action"), naming the NFL and NFLP[2] as defendants. The gravamen of plaintiffs' claims is that the use of the Jaguar name and logo on shirts, hats, tote bags, and other consumer items is a violation of the Lanham Act, 15 U.S.C. §§ 1051–1127. On June 2, 1994, the NFL assigned its interest in the Jacksonville Jaguar marks to JJL. Alcantara Decl. at Ex. B. Also on June 2, 1994, JJL filed a declaratory judgment action in the United States District Court for the Middle District of Florida (the "Florida Action"). On August 3, 1994, plaintiffs amended their complaint to add JJL as a defendant. The parties do not dispute that the underlying legal and factual issues in the New York and Florida actions are identical.

---

1. The Jaguar Collection, Ltd. is a British corporation.

2. NFLP is an unincorporated New York association.

## Discussion

28 U.S.C. § 1391(b) (1992) provides in relevant part:

[a] civil action wherein jurisdiction is not founded solely on diversity of citizenship may ... be brought only in ... (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated[3]....

### I. *The § 1406(a) Motion*

■ When venue is challenged by a defendant, plaintiff bears the burden of proving that venue is proper in the forum state. *Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison,* 1994 WL 74860 at *3 (S.D.N.Y. March 7, 1994) (Wood, J.) (citation omitted). Where venue is improper, the district court may dismiss the action, or in the interests of justice transfer the action to a district where venue is proper. 28 U.S.C. § 1406(a).

The essence of defendants' 1406(a) argument is that because the bulk of the alleged infringing activities, specifically the sale of consumer goods, took place in the Jacksonville area, that city is the situs of the events giving rise to plaintiffs' claims. Plaintiffs contend that venue is proper in the Southern District of New York because at the time they filed the instant action, May 13, 1994, the NFL and NFLP owned the federal registration of the Jacksonville Jaguars mark, and entered into the Trust Agreement with JJL from New York.

Prior to its amendment in 1992, venue was proper under § 1391 in the district where "the claim arose". *See* 28 U.S.C. § 1391(b) (1988). Because this language suggested that venue was proper in only one district, § 1391 was amended so that venue was proper in any district where substantial activities giving rise to the claim occurred. *Alcoholics Anonymous World Servs. v. Friedman,* 1992 WL 150633 at *3 (S.D.N.Y. June 17, 1992) (Carter, J.).

■ In an action for trademark infringement venue is proper (1) in any district where a substantial amount of goods are sold

to deceived customers, *id.* at *2 (citations omitted); (2) where the infringing labels are affixed to the goods in question, *French Transit, Ltd. v. Modern Coupon Sys., Inc.,* 858 F.Supp. 22, 25–26 (S.D.N.Y.1994) (Schwartz, J.); or (3) where a defendant advertises and markets the infringing goods, *id.* at 26 (citations omitted).

■ I find that venue is proper in the Southern District of New York. From their New York offices, the NFL and NFLP participated in the selection and design of the Jacksonville Jaguar mark. *See Declaration of Douglas N. Masters* ("Masters Decl."), sworn to October 27, 1994, at Exs. B and L. At the time this action was filed, the mark was owned by the NFL and NFLP, which are both located in Manhattan. *See* § 1406(b) (venue proper where substantial part of property that is the subject of the action is situated). The NFL's assignment of its interest in the marks to JJL three weeks after the instant action was filed does not alter the propriety of venue in this district at the time the action was commenced. The NFL and NFLP from New York, presumably through the rights conferred upon them by the Trust Agreement, had goods marketed which were embossed with the Jacksonville Jaguars logo to retailers nationwide, including some within the Southern District of New York. *See* Affidavit of Karen Stafford, sworn to October 27, 1994. Therefore, defendants' motion to dismiss or transfer this action for improper venue pursuant to § 1406(a) is denied.

### II. *The § 1404(a) Motion*

■ Section 1404(a) provides "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The decision to grant a transfer lies within "the broad discretion of the district court ... [and is] determined upon notions of convenience and fairness on a case-by-case basis." *In re Cuyahoga Equip. Corp.,* 980 F.2d 110, 117 (2d Cir.1992) (cita-

---

**3.** Subsections (1) and (3) of § 1391(b) are inapplicable in the instant action because defendants do not reside in the same state, and the parties do not dispute that the action could have been brought in another judicial district.

tion omitted). The moving party must make a clear and convincing showing that the transfer is appropriate. *Van Zwinnen v. S.S. "Ever Grand"*, 1994 WL 465918 at *2 (S.D.N.Y. August 24, 1994) (citing *Factors, Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir.1978), *cert. denied*, 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979)).

The threshold question in a transfer motion is whether the action could have initially been brought in the district to which transfer is proposed. *Arrow Electronics, Inc. v. Ducommun, Inc.*, 724 F.Supp. 264, 265 (S.D.N.Y.1989) (Leisure, J.) (citing Wright, Miller & Cooper, *Federal Practice and Procedure* § 3845)). If the action could have been brought in the proposed district, factors courts consider in deciding whether to transfer an action include the (1) convenience of the parties; (2) convenience of the witnesses; (3) relative ease of access to sources of proof; (4) availability of process to compel the attendance of unwilling witnesses; (5) interests of justice; and (6) forum's familiarity with the governing law. *Cento Group, S.P.A. v. OroAmerica, Inc.*, 822 F.Supp. 1058, 1060 (S.D.N.Y.1993) (Sweet, J.); *Sunshine Cellular v. Vanguard Cellular Sys.*, 810 F.Supp. 486, 500 (S.D.N.Y.1992) (Carter, J.); *Arrow Electronics*, 724 F.Supp. at 265.

Defendants have failed to show that this action could have been brought in the Middle District of Florida when it was filed. Defendants blur a crucial distinction on this question. The instant action could have been brought in the Middle District of Florida on May 13, 1992, if plaintiffs alleged that naming the team the "Jacksonville Jaguars" was a violation of the Lanham Act. Plaintiffs' action, however, implicates the manner in which the Jacksonville Jaguar name and logo is used on consumer merchandise such as shirts and hats. In other words, the instant action centers around the licensing of the Jacksonville Jaguar marks for consumer merchandise. Because there is no dispute that the NFL and NFLP were responsible for consumer marketing to nationwide retailers, defendants must make a clear and convincing showing that at the time this action was filed, JJL owned and had licensed the marks to the NFL and NFLP.

According to the declaration of the NFL's counsel before the United States Patent and Trademark Office, the NFL owned the Jacksonville Jaguar marks on the date the instant action was filed. *See* Alcantara Decl. at Ex. A. To explain away this declaration, the NFL submitted a Trust Agreement, indicating that JJL owned the marks, as well as an undated declaration that the application before the United States Patent and Trademark Office was made "on behalf of" JJL[4]. These assertions fail to adequately explain why the NFL declared that it owned the marks at issue here in its application for a trademark[5], and fall short of the clear and convincing showing required to transfer this action.

Finally, I note that even if defendants were able to show that the instant action could have been brought in the Middle District of Florida, a transfer would still be inappropriate. Although defendants list a number of witnesses in the Jacksonville area, plaintiffs claim that most of their documents and witnesses are in the New York area. *See* Masters Decl. at ¶¶ 2–6. Moreover, to the extent plaintiffs challenge the NFL and NFLP's licensing of retailers nationwide, most of the relevant witnesses are likely to be in New York. Section 1404(a) motions should not be granted "if all a transfer would accomplish is to shift the inconveniences from one side to the other." *Sunshine Cellular*, 810 F.Supp. at 501 (citation omitted). While it is true that transfer is appropriate where two actions involve the same operative facts, as "a general policy . . . the first action

---

4. In their papers, plaintiffs argue that if the NFL did, in fact, apply for a trademark on JJL's behalf, the trademark registration was procured fraudulently and is invalid. *See Memorandum in Opposition to Defendants' Motion to Dismiss or Transfer Venue and Reply in Support of Plaintiffs' Motion to Enjoin Defendant Jacksonville Jaguars, Ltd. From Proceeding in the Middle District of Florida* at 2 n. 3 (citing 15 U.S.C. § 1051; *In re Wella A.G.*, 787 F.2d 1549, 1554 (Fed.Cir.1986) (Nies, J., concurring). This is an issue to be determined at a later date.

5. Nor do they explain why the NFL believed it necessary to assign its interest in the marks to JJL.

should have priority absent special circumstances supporting a different result." *Nieves v. American Airlines,* 700 F.Supp. 769, 773 (S.D.N.Y.1988) (Leisure, J.) (quotation and citations omitted). *See also Peter v. Platinum Publications, Inc.,* 1994 WL 440740 at *7 (S.D.N.Y. August 15, 1994) (Schwartz, J.) (although first filed rule not dispositive, plaintiff's choice of forum must be given substantial consideration before transferring action); *Sunshine Cellular,* 810 F.Supp. at 500 (plaintiff's choice of forum entitled to significant weight even where plaintiff not a resident of forum). Defendants have failed to show that any such special circumstances exist in the instant case to transfer it.

### Conclusion

For the reasons discussed above, defendants' motions to dismiss or transfer this action to the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. §§ 1406(a) and 1404(a) are denied. At the February 17, 1995 conference, the parties should be prepared to discuss any remaining case management issues.

**SO ORDERED.**