**PILATES, INC., Plaintiff,**

v.

**PILATES INSTITUTE, INC. d/b/a Institute for the Pilates Method, and Joan Breibart, Defendants.**

No. 94 CV 4796 (KMW).

United States District Court, S.D. New York.

July 10, 1995.

Kenneth L. Bressler, Lieberman & Nowak, New York City, for plaintiff.

Donald A. Kaul, Brownstein, Zeidman & Lore, Washington, DC, Joshua Paul, Cowan, Liebowitz & Latman, New York City, for defendants.

## OPINION AND ORDER

KIMBA M. WOOD, District Judge.

Defendant Pilates Institute, Inc. ("the Institute") and defendant Joan Breibart ("Breibart"), the Institute's president, move to dismiss plaintiff Pilates, Inc.'s ("Pilates") complaint on two grounds: (1) pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure because the court lacks personal jurisdiction over defendants; and (2) pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure because venue is improper in this district. Defendants also move, in the alter-

native, for an order transferring this case to New Mexico in the interests of justice. For the reasons set forth below, I deny defendants' motion.

## I. Background

Plaintiff corporation is engaged in the business of providing exercise instruction, of training exercise instructors, and of providing exercise facilities and equipment—all in accordance with the exercise techniques developed by Joseph Pilates during the 1920's. Plaintiff owns two registered marks that make explicit reference to the Pilates name—the service mark "Pilates," which designates "exercise instruction services," and the service mark "Pilates Studio," which designates "facilities for exercise and physical conditioning." (Def.Reply Mem., Ex. 1.) Plaintiff alleges that defendants have infringed Pilates' marks in violation of, *inter alia,* the Lanham Trademark Act of 1946 ("Lanham Act"), 15 U.S.C. § 1015, *et seq.,* by naming their corporation the Pilates Institute, and by selling videos, drawings, and equipment purporting to teach the Pilates Method. (Complaint ¶¶ 18–19.) Plaintiff also asserts that the infringement has occurred and continues to occur in the Southern District of New York. (Complaint ¶¶ 4–5.)

## II. Discussion

### A. *Standard of Review*

It is well-established that when motions are made pursuant to Rule 12, the plaintiff's complaint and affidavits are to be construed, and any doubts are to be resolved, in the light most favorable to the plaintiff. *Editorial Musical Latino Americana, S.A. v. Mar Int'l Records, Inc.,* 829 F.Supp. 62, 64

(S.D.N.Y.1993). Although the plaintiff benefits from favorable construction of his or her submissions, it is well settled that the plaintiff also bears the burden of proving a prima facie case for jurisdiction over a defendant in order to survive a motion to dismiss.[1] *A.I. Trade Finance, Inc. v. Petra Bank,* 989 F.2d 76, 79–80 (2d Cir.1993); *see also Editorial Musical Latino Americana, S.A.,* 829 F.Supp. at 64; *Dave Guardala Mouthpieces, Inc. v. Sugal Mouthpieces, Inc.,* 779 F.Supp. 335, 336–37 (S.D.N.Y.1991). Plaintiff will be found to have met his or her burden even if the moving party makes contrary allegations that place in dispute the factual basis of plaintiff's prima facie case. *National Cathode Corp. v. Mexus Co.,* 855 F.Supp. 644, 646 (S.D.N.Y.1994).

Exactly what is necessary to establish a prima facie case of personal jurisdiction varies somewhat depending on the procedural posture of the particular case. Because the parties in this case have engaged in some discovery on the issue of jurisdiction, (Pl.Ex. C at 3), plaintiff's prima facie case must be factually supported. *Ball v. Metallurgie Hoboken–Overpelt, S.A.,* 902 F.2d 194, 197 (2d Cir.), *cert. denied,* 498 U.S. 854, 111 S.Ct. 150, 112 L.Ed.2d 116 (1990); *accord Palmieri v. Estefan,* 793 F.Supp. 1182, 1186 (S.D.N.Y.1992). Yet where, as here, the defendant challenges only the legal sufficiency of the plaintiff's factual allegation by filing a Rule 12(b) motion, a plaintiff's obligation generally is easiest to fulfill, for it need persuade the court only that its factual allegations constitute a prima facie showing of jurisdiction.[2] *Ball,* 902 F.2d at 197.

---

1. Once a jurisdictional challenge is raised at trial, the plaintiff will be required to establish his or her case for the court's jurisdiction over defendant by a preponderance of the evidence. *Hubbell, Inc. v. Pass & Seymour,* 883 F.Supp. 955, 960 (S.D.N.Y.1995):

2. Both defendants and plaintiff have submitted affidavits and other documentation outside of the pleadings. Because "[a] Rule 12(b)(2) motion is inherently a matter requiring the resolution of factual issues outside of the pleadings ... all pertinent documentation submitted by the parties may be considered in deciding the motion." *John Hancock Property and Casualty Ins. Co. v.*

*Universale Reinsurance Co., Ltd.,* 91 Civ 3644, 1992 WL 26765, at *6 (S.D.N.Y. Feb. 5, 1992) (citing, *inter alia,* 5 Wright & Miller, Federal Civil Practice and Procedure: Civil 2d § 1351); *see also Visual Sciences, Inc. v. Integrated Communications, Inc.,* 660 F.2d 56, 58 (2d Cir.1981). That is, unlike Rule 12(b)(6) motions, which require conversion into a motion for summary judgment where extrinsic materials are considered, "[i]t is well-settled that in considering jurisdictional motions, the Court may consider evidence outside of the pleadings in reaching its decision without necessitating the use of Rule 56." *American Centennial Ins. Co. v. Seguros La Republica,* 90 Civ. 2370, 1991 WL 60378, at *3 (S.D.N.Y. April 8, 1991).

B. *Personal Jurisdiction over the Institute*

■ To determine the existence of personal jurisdiction over a non-domiciliary in a federal question case, this court applies the long-arm statute of the forum state. *Editorial Musical Latino Americana, S.A.,* 829 F.Supp. at 64; *Dave Guardala Mouthpieces, Inc.,* 779 F.Supp. at 337. New York's long-arm statute provides, in relevant part:

(a) ... As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:

(1) transacts any business within the state or contracts anywhere to supply goods or services in the state; or

(2) commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

(3) commits a tortious act without the state causing injury to a person or property within the state....

N.Y.Civ.Prac.L. & R. ("CPLR") § 302(a). Plaintiff contends, and I now hold, that jurisdiction exists over defendants under both CPLR § 302(a)(1), the transacting business provision, and § 302(a)(2), the tortious conduct provision.

1. *CPLR § 302(a)(1)*

■ CPLR 302(a)(1) is a "single-act" statute, meaning that proof that one transaction occurred in New York is sufficient to invoke jurisdiction, provided that the defendant's activities were purposeful, and that there was a substantial relationship between the transaction and the claim asserted. *Kreutter v. McFadden Oil Corp.,* 71 N.Y.2d 460, 527 N.Y.S.2d 195, 198–99, 522 N.E.2d 40, 43 (1988). Furthermore, the defendant need not actually enter New York to be viewed as transacting business in the state. *Id.; see also Klagsbrun v. Ross,* 93 Civ. 7709, 1995 WL 43664, at *2–*3 (S.D.N.Y. Feb. 3, 1995) (finding jurisdiction under § 302(a)(1) where defendant uses phone and/or mail to "project himself" into New York). There is no precise formula to aid the court in assessing whether a defendant has engaged in sufficient purposeful activity to confer jurisdiction under CPLR § 302(a): instead, the court must examine the totality of the circumstances to determine whether an adequate basis for jurisdiction has been alleged. *Catauro v. Goldome Bank for Savings,* 189 A.D.2d 747, 592 N.Y.S.2d 422, 423 (1993); *Painewebber Inc. v. WHV, Inc.,* 95 Civ. 0052, 1995 WL 296398, at *2 (S.D.N.Y. May 16, 1995).

■ Accepting plaintiff's allegations as true, I conclude that plaintiff has shown that the Institute engaged in purposeful business activity in New York. I also find that the relationship between this activity and the claims presented by plaintiff is sufficiently substantial and direct that the Institute could have foreseen the possibility that it might be haled into a New York court to defend itself in a trademark-related action. Some examples of defendant's jurisdiction-conferring conduct include: advertising goods using the allegedly infringing mark in at least one magazine distributed solely in New York (Pl. Ex. B at 502–03); training an instructor to teach the Institutes version of the Pilates method in New York (Gallagher Decl. at 2–3); soliciting membership in the Institute from New York residents (Ex. A at 271); soliciting the sale of its allegedly infringing products from New York residents (Ex. A. at 271); soliciting a video store in New York to sell its video "Working Out the Pilates Way" (Ex. A at 141); offering workshops on the Pilates method in New York (Complaint ¶ 33). *See generally* Pl.Mem. in Opp'n at 3–7. In short, I conclude that plaintiff has established a prima facie case that the Institute has deliberately targeted its products and services at New York residents, and that, because it is precisely the bona fides of these products and services that plaintiff challenges, there is a sufficient relationship between defendant corporation's purposeful transactions and this action to confer jurisdiction under CPLR § 302(a)(1).

2. *CPLR § 302(a)(2)*

■ I find that an alternative statutory basis for the exercise of jurisdiction over the

Institute exists in CPLR § 302(a)(2)—the tortious conduct provision of New York's long-arm statute. It is the well-established law of the Second Circuit that "[o]ffering one copy of an infringing work for sale in New York ... constitutes commission of a tortious act within the state sufficient to imbue this Court with personal jurisdiction over the infringers." *Editorial Musical Latino Americana, S.A.*, 829 F.Supp. at 64 (citing cases). The rationale underlying this rule is that "in cases of trademark infringement, 'the wrong takes place not where the deceptive labels are affixed to the goods or where the goods are wrapped in the misleading packages, but where the passing off occurs....'" *German Educational Television Network, Ltd. v. Oregon Public Broadcasting Co.*, 569 F.Supp. 1529, 1532 (S.D.N.Y.1983) (quoting *Vanity Fair Mills, Inc. v. T. Eaton Co.*, 234 F.2d 633, 639 (2d Cir.1956)); *see also Dave Guardala Mouthpieces, Inc.*, 779 F.Supp. at 337. Thus *where* the attempted passing off takes place—not the *success* of the attempted passing off, *German Educational Television Network, Ltd. v. Oregon Public Broadcasting Co.*, 569 F.Supp. 1529, 1532 (S.D.N.Y.1983), or the *quantity* of goods actually passed off, *Hubbell Inc. v. Pass & Seymour, Inc.*, 883 F.Supp. 955, 961–62 (S.D.N.Y.1995)—is the central inquiry in determining whether jurisdiction exists under CPLR § 302(a)(2) in cases in which trademark infringement is alleged.

I find that plaintiff has established a prima facie case that the Institute has attempted to pass off the allegedly infringing goods and services in this state, and, accordingly, I find that this court may exercise jurisdiction over defendant corporation pursuant to 302(a)(2). For example, the Institute has mailed into New York a four-page brochure advertising one of its products known as the "Mini–Reformer." While defendants assert that this act raises no question of infringement because plaintiff owns no trademark for the Mini–Reformer product, defendant Breibart has also acknowledged that the Institute attaches to these brochures more general "order sheets" that are intended to solicit both membership in the Institute, as well as the purchase of exercise videos and books with such general

titles as "Working out the Pilates Way" and "Full Body Workout I Video." (Pl.Ex. A at 271; Pl Ex. C at 21.) To the extent that the order sheets mailed into New York advertise products and services that, as plaintiff alleges, infringe on plaintiff's registered service marks, defendant has passed off its allegedly infringing goods in New York, and thus is subject to jurisdiction here. *See, e.g., Honda Associates, Inc. v. Nozawa Trading, Inc.*, 374 F.Supp. 886, 889 (S.D.N.Y.1974) (noting that it has been held that the distribution of catalogs offering goods under an infringing trademark, even without actual sales, constitutes a tortious act, and citing cases).

## C. *Personal Jurisdiction Over Breibart*

The fiduciary shield doctrine, which prevents a court from exercising jurisdiction over an individual corporate officer if that officer acted solely within his or her corporate capacity in the forum state, has been employed by courts in several substantive areas of the law—contract and tort, for instance—as a defense to individual liability. However, in the context of personal jurisdiction, New York courts explicitly have rejected application of the fiduciary shield doctrine:

> Both the Second Circuit and the New York Court of Appeals have recently held that the fiduciary shield doctrine is inapplicable when jurisdiction is asserted under the New York long-arm statute. *Retail Software Services, Inc. v. Lashlee*, 854 F.Supp. 18, 22–24 (2d Cir.1988); *Kreutter v. McFadden Oil, Corp.*, 522 N.E.2d 40 (1988). The state Court of Appeals found sufficient protection for individual corporate officers in the constitutional and statutory jurisprudence of long-arm jurisdiction already in existence, and held that applying the fiduciary shield doctrine would be unfair to plaintiffs.

*Schieffelin & Co. v. The Jack Company of Boca, Inc.*, 725 F.Supp. 1314, 1318 (S.D.N.Y. 1989).

Although the fiduciary shield doctrine has been rejected in New York, it well established that individual officers and employees of a corporation are not automatical-

ly subject to personal jurisdiction in New York simply because a court can exercise jurisdiction over the corporation. In fact, employees who are not primary actors in the relevant transactions, but rather are merely corporate employees who played no part in the questionable activities, cannot be haled into New York courts simply because the corporation for which they work is alleged to have engaged in corporate wrongdoing. *See Kreutter,* 522 N.E.2d at 45.

■ Yet, unlike the mere functionary who has no discretion to affect the corporate acts or policy alleged to be unlawful, "[a] corporate president who has a financial interest in the company and the ability to supervise or control an infringing activity will be held personally liable." *Editorial Musical Latino Americana,* 829 F.Supp. at 66. Plaintiff alleges that Breibart is "a conscious, dominant and active force behind the wrongful acts of Pilates Institute." (Pl.Complaint ¶ 5.) In support of this allegation, plaintiff has submitted numerous letters that Breibart herself has written to persons and organizations in New York, including, for example, a letter to a dance studio encouraging them to teach the Pilates method, (Pl.Ex. A at 119), and several letters to New York-based magazines encouraging them to publicize Pilates' techniques (Pl.Ex. A at 120–125, 127–130). Accordingly, I find that plaintiff's allegations regarding the influence of Breibart in the Institute, and in particular, the role Breibart has played in targeting New York for the allegedly infringing goods and services are sufficient to subject Breibart to jurisdiction in this court. *Camel Investments Ltd. v. Transocean Capital Ltd.,* 195 A.D.2d 533, 600 N.Y.S.2d 471, 472 (1993) ("It is well settled that a nonresident need not be physically present in New York State as a prerequisite to obtaining jurisdiction over the nonresident . . . Here, the appellant's actions in transacting business in New York through the use of telephones, 'faxes,' and wire transfers, as well as through its agents, makes the exercise of personal jurisdiction appropriate.").

■ I note that defendants point to dicta in *Kinetic Instruments, Inc. v. Lares,* 802 F.Supp. 976 (S.D.N.Y.1992), that supports their assertion that a defendant must be physically present in New York while committing the tort in order for jurisdiction to exist under CPLR § 302(a)(2). (Defs.' Reply Mem. at 12–13.) Respectfully, I must disagree with the view that interprets CPLR § 302(a)(2) as establishing that a defendant's physical presence is an essential ingredient for jurisdiction.

In *Feathers v. McLucas,* 15 N.Y.2d 443, 261 N.Y.S.2d 8, 20–21, 209 N.E.2d 68, 77 (1965), a personal injury case, the New York Court of Appeals declined to exercise personal jurisdiction over a Kansas corporation that negligently designed and constructed tractor-drawn steel tank in its home state, and then shipped the defective product to New York— where it subsequently exploded, injuring plaintiff. In finding that the tortious act provision of CPLR § 302(a)(2) did not apply, the New York Court of Appeals explained:

> The language of paragraph 2 conferring personal jurisdiction over a nondomiciliary "if, in person or through an agent, he . . . commits a tortious act within the state" is too plain and precise to permit it to be read . . . as if it were synonymous with "commits a tortious act without the state which causes injury within the state." The mere occurrence of the injury in this State certainly cannot serve to transmute an out-of-state tortious act into one committed here within the sense of the statutory wording. Any possible doubt on this score is dispelled by the fact that the draftsmen of section 302 pointedly announced that their purpose was to confer on the court personal jurisdiction over a non-domiciliary whose act in the state gives rise to a cause of action. . . .

By distinguishing those torts committed out-of-state but producing in-state consequences from those torts that are actually *committed* in state, the court was simply noting that the place of injury is not necessarily the place where the tort is deemed to have occurred for legal purposes.[3]

---

**3.** The year following the New York Court of Appeals' decision in *Feathers,* the New York State legislature amended CPLR § 302 by adding

§ 302(a)(3), which explicitly provides for jurisdiction over parties who commit a tortious act "without the state causing injury to person or

Subsequent cases, however, have interpreted the above-quoted language from *Feathers* to mean that under New York law, physical presence in the state is required to give rise to jurisdiction under CPLR § 302(a)(2). In particular, in *Lynn v. Cohen*, 359 F.Supp. 565, 568 (S.D.N.Y.1973), the court cited *Feathers* for the proposition that "New York courts have given a strict interpretation to § 302(a)(2) requiring, in effect, that the defendant be physically present in New York while committing the tort." *See Paul v. Premier Elec. Construction Co.*, 576 F.Supp. 384, 389 (S.D.N.Y.1983) (citing *Lynn* and relied upon in *Kinetic*); *Dept. of Economic Devel. v. Arthur Andersen & Co.*, 747 F.Supp. 922, 929 (S.D.N.Y.1990) (citing *Paul* and relied upon in *Kinetic*).

In my view, the more accurate interpretation of both the language of § 302(a)(2) and of the Court of Appeals in *Feathers* is that they require, as a prerequisite to the exercise of personal jurisdiction, that the tort that is the subject of the dispute have been committed in the state. While it is surely the case that the great majority of torts that subject defendants to CPLR § 302(a)(2) jurisdiction are committed by persons who are within the state at the time (*e.g.*, assault, trespass, negligence), the weight of authority holds that at least when the tort alleged is infringement, the physical presence of the defendant is not required for the tort to be viewed—for the purposes of conferring jurisdiction—as having occurred in New York. *See German Educational Television Network, Ltd.*, 569 F.Supp. at 1532; *Editorial Musical Latino Americana, S.A.*, 829 F.Supp. at 64; *Dave Guardala Mouthpieces, Inc.*, 779 F.Supp. at 337. Thus personal jurisdiction is proper over a non-domiciliary who has never been to New York and who is alleged to have committed the tort of infringement within New York so long as the allegedly infringing goods are passed off in New York.

## D. Venue

### 1. Improper Venue: 28 U.S.C. § 1406(a)

 Venue in trademark and unfair competition cases is governed by the general federal venue statute, 28 U.S.C. § 1391(b), which provides that "a civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in ... (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred...."[4] Almost all courts that have addressed the language of § 1391(b) have construed it to mean that venue may be proper in more than one district. For example, in trademark infringement claims, courts have held that venue may be proper in each jurisdiction where infringement is properly alleged to have occurred. *See, e.g., Cottman Transmission Systems, Inc. v. Martino*, 36 F.3d 291, 294–95 (3d Cir.1994).

 While there is general agreement that § 1391(b) provides for venue in more that one district, there is little caselaw defining the phrase "substantial part of events" with any precision. *See French Transit, Ltd. v. Modern Coupon Systems, Inc.*, 858 F.Supp. 22, 26 (S.D.N.Y.1994). However, at least one court in the Southern District of New York has held explicitly that "if a defendant targets the District by advertising and actively pursues efforts to market the product by making sales presentations and selling even a relatively nominal amount of products in the District, such actions may be regarded as constituting a substantial part of events giving rise to the claim." *Id.; see also Eastman Kodak Co. v. Photaz Imports Ltd., Inc.*, 853 F.Supp. 667, 679 (W.D.N.Y.1993) (finding venue proper even though passing off of allegedly infringing product may have occurred with greater frequency in other districts), *aff'd* 28 F.3d 102 (2d Cir.1994); *Jaguar Cars, Ltd. v. National Football League*, 886 F.Supp. 335, 337–38 (S.D.N.Y.1995) (same);

---

property within the state"—provided other contacts between the defendant and the forum exist. *See* CPLR § 302, Practice Commentary, at § C302:17.

**4.** The language of § 1391(b) was amended by the Judicial Improvements Act of 1990, Pub.L. No. 101–650, Title III, § 311, 104 Stat. 5114 (1990).

Prior to the 1990 amendment, the statute provided that a civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought "only in the judicial district where all defendants reside, or in which the claims arose, except as otherwise provided by law."

*Halsoprodukter Labs Karnerud A.B. v. Gero Vita International,* 93 C 2129, 1993 WL 384525, at *3 (N.D.Ill. Sept. 28, 1993) (same). Because plaintiff has alleged that defendant targeted New York through advertising, and through direct-mail solicitation, *see supra,* I find that plaintiff has satisfied the burden of demonstrating that venue is proper. *See French Transit, Ltd.,* 858 F.Supp. at 25 (noting that once an objection to venue has been raised, the plaintiff bears the burden of establishing that venue is proper).

### 2. *"Interests of Justice": Transfer under 28 U.S.C. 1404(a)*

Defendants argue that even if I conclude that venue is proper in this district, I nonetheless should transfer this action to New Mexico pursuant to 28 U.S.C. § 1404(a), which provides:

> For the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

 It is firmly established that the party seeking venue transfer in the "interests of justice" bears the significant burden of making a clear and convincing showing that a case should be transferred. *See Eskofot A/S v. E.I. du Pont de Nemours & Co.,* 872 F.Supp. 81, 95 (S.D.N.Y.1995) (citing cases), and that "motions for transfer lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis." *In re Cuyahoga Equipment Corp.,* 980 F.2d 110, 117 (2d Cir.1992).

 The factors that guide the district court's discretion in determining whether to transfer a case pursuant to § 1404(a) are: (1) the convenience of witnesses; (2) the location of relevant documents and relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and

the interests of justice, based on the totality of circumstances. *Constitution Reinsurance Corp. v. Stonewall Ins. Co.,* 872 F.Supp. 1247, 1250–51 (S.D.N.Y.1995).

 Courts generally view the convenience of witnesses as the single most important factor in the balance. *See French Transit, Ltd.,* 858 F.Supp. at 27; *Kraemer Export Corp. v. Peg Perego U.S.A., Inc.,* 93 Civ. 0198, 1994 WL 86357, at *5 (S.D.N.Y. March 17, 1974). To meet its burden of demonstrating that transfer is in the convenience of the witnesses, the party seeking transfer must "specifically list the evidence and witnesses on which the party intends to rely in the transferee district, along with a general statement of the topics of each witness' testimony ... Absent such a showing, the motion should be denied." *Editorial Musical Latino Americana, S.A.,* 829 F.Supp. at 66–67. Defendants have submitted no such information, and thus it is impossible for the court to conclude that this important factor weighs in favor of transfer. Because defendants have not established this, or any other basis, for transfer, I find that plaintiff's choice of forum should not be disturbed.

### III. Conclusions

For the reasons stated above, defendants' motion to dismiss or, in the alternative, to transfer, is denied. By July 15, 1995, and in accordance with my Individual Rules, the parties are directed to submit a pretrial scheduling order with a Ready Trial date of October 2, 1995, as well as a discovery plan that conforms to the requirements set forth in Rule 26(f) of the Federal Rules of Civil Procedure.

SO ORDERED.